194 So.2d 388 (1967)
In re the STATE of Louisiana In the Interest of Kimberly Lynn and Cynthia Elizabeth FISCHBEIN, children under seventeen years of age.
No. 2444.
Court of Appeal of Louisiana, Fourth Circuit.
January 9, 1967.
Rehearing Denied February 13, 1967.
*389 Louis P. Trent and Lillian M. Cohen, New Orleans, for Mrs. Ruth Marie Pearson Fischbein, respondent-appellant.
James F. Quaid, Jr., New Orleans, for Mr. and Mrs. Charles H. Fischbein, amici curiae.
Before YARRUT, HALL and BARNETTE, JJ.
BARNETTE, Judge.
This is an appeal by the mother of two little girls from a judgment of the Juvenile Court for the Parish of Jefferson decreeing the children abandoned by her under provisions of LSA-R.S. 9:403. The judgment also granted temporary care and custody of the children to their paternal grandparents.
This action was initiated, as required by the statute, by Frank E. Evans, representing himself as an officer of the juvenile court, by an affidavit made by him before the judge of the court on December 6, 1965.[1] Evans was a mere nominal party and made no further appearance in the case. In his affidavit he states the reason and motive behind the institution of the proceeding in the following words:
"The Mrs. Marie Roache, wife of and Charles H. Fischbein [the paternal grandparents] are desirous of adopting the said children and for that reason it becomes necessary that the right and interest of the natural mother, Mrs. Ruth Marie Pearson Fischbein, be determined."
In the opening statement of the judgment by the court the judge said:
"Mr. Charles H. Fischbein and his wife, Mrs. Mae Roache Fischbein, petitioned this court by procedure as set up by law to have two of their grandchildren, namely, Kimberly Lynn Fischbein, born on August 18, 1957, and Cynthia Fischbein, born on August 1, 1962, decleared abandoned children."
Notwithstanding the court's recognition of Mr. and Mrs. Fischbein as petitioners, they cannot legally appear as such. *390 As private persons, they have no right of action to institute this proceeding; and, except for the nominal appearance of Mr. Evans, an officer of the court, the action could not be maintained.
All proceedings in the juvenile court are brought by and in the name of the State, only on petition of a probation officer or the district attorney, in the interest of the named juveniles and "shall be entitled `The State of Louisiana in the interest of ________________ ______________________, a child [or children] under seventeen years of age,'" LSA-R.S. 13:1574. The only exceptions to this procedure are adoption cases, which are governed by special statute, and proceedings to have a child decreed abandoned under the provisions of LSA-R.S. 9:403 which authorizes initiation of the action on "[a]n affidavit * * * by an agency, or an officer of the court * * *." An agency is defined in LSA-R.S. 9:401 as follows:
"`Agency' means the state department of public welfare or an agency or institution licensed by the state department of public welfare for the placement of children for adoption."
The reason for extension of this right of procedure to agencies, such as maternity homes and foundling institutions, is obvious.
Since this is an ex parte proceeding initiated by an officer of the juvenile court "In the Interest of the minors, Kimberly Lynn and Cynthia Fischbein," there is no defendant. The parent is required to be served with a copy of the petition and order setting the matter for hearing, and her appearance in response thereto is not as a defendant, but, more correctly, as a respondent. It was therefore technically incorrect for the mother to denominate herself "defendant-appellant." She is "respondent-appellant."
Mr. and Mrs. Fischbein are not parties to this proceeding in any respect, although as grandparents hoping to adopt the children, they are interested in the ultimate decision in this proceeding. Their appearance in this court as "appellees" is entirely without authority, and we should not have permitted their attorney to argue the case or file a brief in their behalf except in the capacity of amici curiae. Since we did not timely raise this point, we will consider his argument and brief but only as though submitted in that capacity.
The foregoing statements of Mr. Evans and the trial judge clearly reveal who the moving parties are, and the sincerity of the charge of abandonment on account of alleged failure of the mother to make support payments must be considered in the light of their desire to adopt their grandchildren, an action which cannot be accomplished over the mother's objection without first having her parental rights terminated through this proceeding.
The only alleged basis upon which the decree of abandonment is sought is the failure of the mother, Mrs. Ruth Marie Fischbein, to pay, for a period of more than four months, $15 per week for the support of the two named children as ordered by the juvenile court on January 29, 1964, in proceeding number 12655. The action is limited to the mother.
The only witnesses called to testify at the hearing below were the respondent and the maternal grandmother, Mrs. Lola Thoman. Respondent was called first on cross-examination and the extent of her testimony was practically nil. She did not remember the date of the payment order. She was uncertain as to the amount paid to the juvenile court; and, when asked by counsel if it was approximately $195, she said, "I suppose so, I really don't know." She testified that she had made payments through her mother and to Mrs. Fischbein. She could not estimate the amount. At this point the attorney for the Fischbeins, the proponents of this action, closed his case and rested. The alleged support order was not offered in evidence; the minutes of the court in that proceeding were not offered; *391 and the clerk was not called to testify to the amount of payments made, or whether the mother was in default. Certainly the records of the court are the best evidence of what they contain. The court, apparently recognizing the total failure to make out a case of abandonment against the mother, asked her how much she had paid for the support of the children in the last four months. She answered:
"I haven't sent them any. I don't think I have sent any since I sent them money in December [the month in which the proceeding was filed], but I don't know if I have any receipts for any other months besides that."
At this point the case should have been dismissed, but counsel for respondent elected to proceed further and then called the respondent mother on direct examination, after which she was subjected to further cross-examination and further interrogation by the court.
The substance of her testimony, as it relates to the primary issue of support payments, is that she was without means to pay $15 per week and that she paid such sums as she could, but, admittedly, not in accordance with the court's order. The only evidence of her means to pay was her testimony that while in California in September through December 1965, while attending a trade school to prepare for more suitable employment, she worked part-time for the school for $1.50 per hour. She also testified that she was employed for a while as a dance hall hostess, for which she was paid about $54 per week on a commission basis. It is not indicated whether this employment was during the same period that she was working part-time for the trade school. When told by the judge that the welfare department had reported that she was earning $115 per week, she specifically denied the report.
The preceding is a complete summary of her testimony relative to her employment income. The trial judge's finding, as stated in his written judgment, that "she testified that after being treated medically from the results of the accident she was employed at $115.00 a week as a dance hall hostess in California and she was making $1.50 an hour while attending a business school" is completely in error.
It may be assumed that the $115 figure came to the court through a report of the welfare department in connection with an earlier attempt by the Fischbeins to adopt the two children in question. If so, the report was ex parte and was based entirely upon hearsay information obtained through welfare department investigatory channels. It should have been totally rejected.
The balance of the testimony by respondent and the testimony of her mother, Mrs. Thoman, related only to the efforts of the mother and grandmother to keep in contact with the children, their giving certain objects of clothing and small sums of money, and their concern for the children. However, their testimony did reveal, incidentally and partly by inference, certain facts which should have been explored in depth before the court could properly decide the issue, especially when the extremely drastic and far-reaching social, emotional, and legal consequences of a decree of abandonment are considered. It should be foremost in the mind of the court that this is a proceeding "in the interest of" the two little girls.
The facts incidentally and inferentially revealed are that:
1. There are two other children, probably living with their father who is remarried.
2. There was a divorce decree in Mississippi.
3. The father is also under a judgment for support.
4. The legal custody of all four children is in doubt.
5. One or more decrees affecting the legal custody of the children were rendered *392 by the Twenty-Fourth Judicial District Court for the Parish of Jefferson. No copies of such decrees were filed in evidence.
6. There was an earlier proceeding by Mr. and Mrs. Fischbein to adopt the two little girls, and their mother learned of it through the welfare department in time to oppose it successfully.
7. The father and mother have both acted irresponsibly toward the children, and neither has fully discharged the duties of parenthood.
8. Mr. and Mrs. Charles H. Fischbein probably were not concerned with contributions of support from either the father or mother of the children, and the payment order and mother's default were used to create a condition to further their chances of adoption.
These and many other factors touching upon the welfare of these children should be carefully considered and explored exhaustively to determine if it is to their best interest that the parental rights of either parent should be irrevocably severed, thus denying to the children forever their inherent right to have their own parents.
As far as we have been able to determine there is no case reported in our jurisprudence dealing with the question presented here. The proponents of the abandonment base their case entirely on the failure of the mother to pay $15 per week in obedience to an alleged court order which has not been offered in evidence and is not in the record before us. The pertinent part of LSA-R.S. 9:403 on which they rely is:
"A. If any child has been deserted for a period of at least four months by his parent and the whereabouts of his parent are unknown and the parent has made no provision for the child's care, or the parent has refused to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid all parental responsibilities, the child shall, after proceedings as hereinafter set forth, be considered an abandoned child. However, this Part shall not be construed to require physical care of a child by a parent to whom custody has been denied or from whom custody has been removed by a court of competent jurisdiction." (Emphasis added.)
There is no allegation in the initiating affidavit of Mr. Evans that the mother has ever refused to support her children; it merely alleges her failure to comply with a court order for child support. There is no proof whatever in the record before us that she ever refused. On the contrary, she did make some effort within her means and did manifest an interest and concern, negating "an intention to permanently avoid all parental responsibilities."
Mere failure to pay child support or refusal to pay, even when ordered by a court, is not of itself sufficient cause to justify a decree of abandonment. The crucial part of section 403 is the phrase, "under circumstances showing an intention to permanently avoid all parental responsibilities." The interpretation given this section by the proponents of this action ignores this phrase, which was included in the sentence to qualify the refusal to provide care and support. Child support is but one element of parental responsibility, and its failure does not necessarily imply an intent to avoid all parental responsibility.
We can think of no more harsh decree than one which forever separates a child from his parents and destroys all legal ties between them. The exercise of this authority which strikes at a most sacred relationship is one which should be exercised by the court with extreme caution. All reasonable doubt should be resolved against it and only in those cases where the evidence clearly shows the manifestation of an intent permanently to avoid parental responsibilities should it be exercised. Failure or even refusal of support can be, and *393 often is, explained and justified; and the jurisprudence of this State has recognized this fact. In re LaFitte, 247 La. 856, 174 So.2d 804 (1965); In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963); In re Hughes, 176 So.2d 158 (La.App. 4th Cir. 1965). It was never intended by the legislature that failure to support alone, apart from all other factors bearing upon intent, should be cause for a decree of abandonment.
No costs of court are assessable against any party to a petition in the juvenile court, except in adoption proceedings, LSA-R.S. 13:1585.
The judgment ordering and decreeing the children Kimberly Lynn Fischbein and Cynthia Fischbein abandoned and placing them in the temporary care and custody of Mr. and Mrs. Charles H. Fischbein is annulled and set aside in its entirety.
Judgment annulled and set aside.
NOTES
[1] LSA-R.S. 9:403 provides in part as follows:

"B. An affidavit may be made by an agency, or an officer of the court, before the judge or clerk of the juvenile court having jurisdiction over the child setting forth in general terms the facts constituting abandonment and the place of residence of the parent of the child if known to the deponent. The judge shall then by order fix a time and place for the hearing of this matter not less than sixty days after the date of the order. * * *"