690 So.2d 237 (1997)
In the Interest of D.G.C.
No. 96-C-1093.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 1997.
Kristen R. Buxton, Student Attorney, George Chaney, Jr., Supervising Attorney, Tulane Juvenile Law Clinic, New Orleans, for Relator/Defendant D.W.
Geri Fontana-Flaum, New Orleans, for Respondent/Petitioner C.G.
Gevin P. Grisbaum, Student Practitioner, Catherine L. LaFleur, Supervising Attorney, Loyola Law School Clinic, New Orleans, for Defendant T.C.
Emile J. Dreuil, Jr., New Orleans, for Minor child D.G.C.
Sherry Watters, State of Louisiana, Department of Social Services, New Orleans, for Amicus Curiae.
Before LOBRANO, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
We granted this writ application to review the Juvenile Court's judgment permitting a minor child's caretaker to petition for termination of parental rights. Upon consideration of the facts presented here as well as the context and legislative history of the applicable statute, we vacate the judgment below and remand for further proceedings in accordance with this opinion.

FACTS[1] AND PROCEEDINGS BELOW
The minor child involved in these proceedings, D.G.C., was born in Orleans Parish on May 9, 1989 to Tina, who was twenty-four years old and unmarried. No father was named on the child's birth certificate, so the baby girl was given her mother's surname. Tina gave physical custody of the infant to Cathy, who is unrelated to the child, almost immediately after the birth. Cathy has not sought legal recognition of this placement, either through designation as D.G.C.'s foster parent or in an action for custody.
On April 24, 1995, Daren executed an affidavit acknowledging his paternity of D.G.C. and, with Tina's concurrence, requested *238 the issuance of a revised birth certificate to add his name as the child's father and to change her surname to his. The next month, after a new birth certificate had been issued, Tina executed an affidavit giving Daren sole legal custody of the child, and instructed Cathy to deliver D.G.C. and all of her belongings to Daren.[2] Cathy refused. In September Daren and Tina filed a joint Petition to Establish Child Custody in Orleans Parish Civil District Court. The petition asserted that D.G.C. had been living with Cathy over their objections for the past five years, and asked that custody of the child be given to Daren, with visitation privileges for Tina. A hearing on the matter was set for November 15, 1995.
In response to this action, Cathy filed a "Motion for Leave of Court to File Termination of Parental Rights" [3] and a "Petition for Termination of Parental Rights" in Orleans Parish Juvenile Court. These pleadings alleged that Tina had given custody of D.G.C. to Cathy "before a notary and 19 witnesses"[4] and that neither parent had made any attempt to contact the child since birth. Asserting that both parents had demonstrated their intent "to permanently avoid parental responsibility" by their failure to care for and support D.G.C., Cathy's petition prayed "[t]hat after all due proceedings be had, there be judgment herein in the best interests of the child, and in favor of the State of Louisiana and against the parents,... granting the petition and permanently terminating the rights of the parents to their child." Although neither legal custody nor adoption of D.G.C. is mentioned in her pleadings, Cathy's memoranda and arguments indicate her eventual desire to attain both.
On October 11, 1995, the Juvenile Court granted Cathy leave to file the petition, which was clocked in that same day. She subsequently obtained a stay of the custody proceedings in Civil District Court, and an attorney was appointed to represent D.G.C. Because Tina could not be located for service of the petition, a curator was appointed to act on her behalf. Pending adjudication, Daren was granted limited visitation rights, but no interim custody order was rendered.[5]
Both Daren and Tina moved to dismiss the petition on the grounds that because D.G.C. had been voluntarily placed into Cathy's custody, no abandonment had occurred as a matter of law.[6] Daren, however, also asserted that because a parent has a fundamental right to raise his child, a private individual neither had, nor should have, the authority to institute an action to terminate parental rights. He further claimed that the State's involvement was necessary to effectuate his due process rights to full discovery.
After three hearings and consideration of numerous memos submitted by the parties, the Juvenile Court denied both motions to dismiss on April 16, 1996. In oral reasons for judgment, the court noted that the question of abandonment was one of fact, to be determined based upon the totality of the circumstances, which weighed in favor of permitting these proceedings. In addition, the court found that the Comments to Article 1004 of the Children's Code established that the legislature had intended to permit such *239 private actions because "[i]t would seem ludicrous to me that the redactors ... would give authority to the D.A. to designate someone to filehave someone other than the State or the D.A. file for a termination and denying that same authority to the court." The court also decided that because of its inherent authority to order any necessary discovery, Daren's due process rights would be protected. A written judgment denying both motions was entered May 13, 1996, and both parents sought review by this court.[7]
As stated in our order of July 22, 1996, we granted Daren's writ application to consider the proper application of Article 1004 of the Children's Code to the facts presented here. After additional briefing of that issue and oral arguments the matter was submitted.

DISCUSSION
Title X of the Children's Code governs the involuntary termination of a parent's right to the care and custody of his or her child.[8] Within this Title, Article 1004 A and B provide that a district attorney may petition for the termination of parental rights or may authorize the Department to file such a petition. However, Article 1004 D authorizes the Department to institute an action for termination without the D.A.'s prior approval if the asserted grounds are the parent's desertion or abandonment of the child, or on any grounds if it has had legal custody of the child for eighteen months. Article 1004 also authorizes the District Attorney to designate counsel, by special appointment, as a special assistant to petition for termination if the asserted grounds are desertion, abandonment, or failure to maintain contact with the child. La. Ch.Code Ann. art. 1004 C.
Cathy, a private individual, petitioned to terminate Tina and Daren's parental rights. She has not been designated as a special assistant by the Orleans Parish District Attorney pursuant to Article 1004 C. Rather, she contends that subsection E of that article, which allows the court, on its own motion, to order that a petition to terminate parental rights be filed, also authorizes her to prosecute this termination action. As a result, this action, the object of which is to terminate the parental rights of both of D.G.C.'s parents, is proceeding entirely without State involvement.
Cathy contends that legislative intent to permit such action by a private individual is demonstrated by 1991 Comment "d" to this article, which referred to the filing of such a petition with leave of court "by anyone other than a representative of the district attorney or the department." She argues that Article 1004 E cannot be meant to literally require that the court act "on its own motion;" because the court would have no way to know that a termination action was necessary, this provision makes sense only if it is interpreted as authorizing the court to allow a private party to institute an action to terminate parental rights.
The Department of Social Services, although not a party to this termination proceeding, has filed an Amicus Curiae brief in this matter. In its brief, the Department agrees with Cathy's argument as to the interpretation of Article 1004 E. The Department advises that its policy is to take action only when it has been given legal custody of a child, and the Orleans Parish District Attorney, unlike the D.A.s in other parishes, does not appoint private counsel as special assistants. It argues, therefore, that the interpretation advanced by the parents and dismissal of Cathy's petition will leave D.G.C. in legal limbo, without a means of obtaining permanence in her life.
Daren and Tina[9] contend that because Article 1004 is clear and unambiguous, there is *240 no justification for looking beyond the statute's language to determine legislative intent. They argue that termination may be sought only by a district attorney, the Department, or by counsel specially appointed by a district attorney. Subsection E merely permits the court to order the filing of a petition to terminate; it does not grant standing to file the petition to terminate to those not specified in subsections A through D. Alternatively, they contend that, even if subsection E were ambiguous, the lack of references to private litigants in Title X and the Children's Code as a whole establishes that termination proceedings by parties other than the State were not contemplated by the legislature. Finally, the parents note that their right to the care and custody of their child has been recognized as a fundamental liberty interest. They argue, therefore, that any ambiguity must be strictly construed in their favor.
Although Article 1004 E expressly gives the court the authority to order the filing of a petition for termination of parental rights, it neither specifies nor provides standards for determining to whom such an order may be directed. Because of this omission, either of the two interpretations urged by the parties to this action is reasonable. Consequently, we must determine which interpretation "best conforms to the purpose of the law." In re C.B., 94-0755, p. 4 (La.10/17/94), 643 So.2d 1251, 1254 (citations omitted). As the Supreme Court did in In re C.B., we begin this search for the intended meaning of Article 1004 with an examination of its legislative history.
Prior to the enactment of the Children's Code, an action to terminate parental rights could be instituted only by the State acting through a district attorney or his designate, which could be an attorney for the Department. La.Rev.Stat.Ann. § 13:1601, repealed by 1991 La. Acts No. 235, § 17. These proceedings were employed in cases involving "an abused, neglected, or other child within a juvenile court's jurisdiction," including those children who had been in the legal custody of the Department for specified periods of time. Id. If the action were successful, the parent's relationship with the child was severed and the child could be declared available for adoption. La.Rev.Stat.Ann. § 13:1605, repealed by 1991 La. Acts No. 235, § 17.
Separate provision was made, however, for children who had been abandoned or deserted by a parent or parents. A judicial declaration of abandonment could be sought in such cases "by an agency [including the Department], private individual, residential child-caring institution ..., or an officer of the court." However, a private individual or residential institution seeking to have a child declared abandoned had to obtain leave of court and show good cause prior to proceeding. La.Rev.Stat.Ann. § 9:403 B, repealed by 1991 La. Acts No. 235, § 17.[10] In all cases, the initiating affidavit had to be served on the Department, which was required to prepare a report for the court. Id. A declaration of abandonment resulted in the parent's permanent loss of his or her rights to custody and to prevent the child's adoption by another. La.Rev.Stat.Ann. §§ 13:1603 A, 13:1605, 9:403 C, repealed by 1991 La. Acts No. 235, § 17.
The Children's Code was enacted in 1991 primarily "to gather together all of the laws affecting the exercise of juvenile court jurisdiction" previously scattered within the Revised Statutes and the Code of Juvenile Procedure. Lucy S. McGough, The Drafting of the Children's Code, 1 La. Ch.Code Ann. p. xi, xiv (West 1995). The intended result would be "a true code, an internally consistent, harmonious set of substantive principles and procedures ... for any proceeding within the juvenile court's jurisdiction." Id. at xiv-xv. Although reform was not a goal of the project, efforts were made "to resolve ambiguity and to reconcile often conflicting laws," such as "in the differences in the standing requirements and procedure governing abandonment proceedings and termination *241 of parental rights cases," as discussed above. Id. at xv-xvi.
As a result of this consolidation and attempted reconciliation, Article 1004 was originally enacted, effective January 1, 1992, as follows:
A. The district attorney or the department when a child has been placed in its custody for at least eighteen months may petition for the termination of parental rights of the parent of the child.
B. The court on its own motion, may order the filing of a petition.
1991 La. Acts No. 235, § 10. In explanatory comments, added later by the Louisiana State Law Institute pursuant to Section 20 of Act 235, it was stated that the second paragraph of the article was meant to provide a balance between the conflicting standing requirements of the predecessor statutes, § 13:1601 and § 9:403. Thus, "approval of the court must be obtained ... before an action seeking termination of parental rights is filed on any ground by anyone other than a representative of the district attorney or the department." Cathy argues that this Comment suggests that the redactors intended to permit private individuals a continued ability to seek a termination of parental rights under Article 1004.
However, just months after the initial enactment of the Children's Code, the Legislature passed into law 1992 La. Acts No. 705. This legislation expanded the sparse language of Article 1004 to specify by whom an action to terminate parental rights could be brought under certain circumstances. Article 1004 now provides that:
A. The district attorney may petition for the termination of parental rights of the parent of the child.
B. By special appointment, the district attorney may designate counsel for the department as a special assistant authorized to petition for the termination of parental rights of the parent of the child.
C. By special appointment for a particular case, the district attorney may designate counsel as a special assistant authorized to petition for the termination of parental rights of the parent of the child on grounds authorized by Article 1015(8), desertion of the child, Article 1015(9), abandonment of the child, and Article 1015(10), failure to maintain contact with the child.
D. When a petition alleges grounds authorized by Article 1015(8), desertion of the child, or Article 1015(9), abandonment of the child, the department may petition for the termination of parental rights of the parent of the child. In cases involving all other grounds authorized by Article 1015, the department may petition for the termination of parental rights of the parent of the child when a child has been placed in its custody for at least eighteen months.
E. The court on its own motion may order the filing of a petition.
1992 La. Acts No. 705, § 1.
In contrast to the provision originally enacted, Article 1004 now includes the various elements of standing from the source statutes relating to both abused and neglected children as well as those abandoned or deserted by their parents. As under prior law, the district attorney is specified as having the discretion to act directly or through a designate, which could be the Department. Similarly, the Department's authority to initiate an action to terminate parental rights is delineated. However, although private individuals were previously accorded express authority to proceed in abandonment actions, such a right to institute termination proceedings is noticeably absent from Article 1004.
While it is argued that subsection E provides that authority by implication, it appears unreasonable that the differing circumstances under which the district attorney and the Department may act would be carefully outlined, but no standards would be provided by which a court could determine when a private action may be permitted. Thus, neither the legislative history nor the structure and language of the present Article support the conclusion that a private individual is authorized to prosecute an action to terminate parental rights.
Looking next to related provisions in Title X, we find it significant that Article *242 1018, which controls the form of a petition to terminate parental rights, specifically requires that the petition in such a proceeding "shall be entitled `The State of Louisiana in the Interest of ...'" If a private individual were authorized to bring an action for termination, as was done here, it would seem anomalous that the State must be named as a party in interest and yet be uninvolved, perhaps unaware, of the proceedings. Similarly, Article 1029 specifies that "[n]o person shall be allowed to intervene" in a termination proceeding. This provision makes sense only if the State has the sole authority to seek termination of parental rights. While it appears reasonable to prohibit intervention by a private individual in an action prosecuted by the State, it would appear unwise to foreclose intervention by the Department or district attorney in a private proceeding to determine a child's future. Thus, these related provisions support the conclusion that private individuals are not authorized to prosecute an action to terminate parental rights.
As previously noted, Cathy bases her argument that she is authorized to proceed with this action on the 1991 Comment to the original Article 1004. However, these Comments are not law. La. Ch.Code Ann. art. 111. In addition, these comments to the original version of Article 1004, which was replaced by the 1992 amendment from the original effective date of the Children's Code,[11] are of little value in determining the meaning of Article 1004 E.
To the extent that the Comments may aid in the interpretation of this statute, we must look to the remarks explaining the present provision rather than the prior, short-lived version. These 1992 Comments indicate that Article 1004 was revised in part to explain that "[w]ith the approval of the district attorney, counsel for private parties seeking a termination of parental rights on the three `abandonment' grounds may be specially designated to bring such an action." Thus, after the amendment the only explicit reference to the right of a private individual to act in termination proceedings is found not in the law, but in an explanatory Comment, which refers to a private individual acting as the D.A.'s designate on behalf of the State. This supports the argument of the parents that only the Department, the D.A., or the D.A.'s designate is authorized to petition to terminate parental rights.
The enactment and implementation of the Children's Code was based upon a comprehensive review of the prior statutes and jurisprudence. The failure to specify that a private individual has authority to institute termination proceedings, and under what circumstances, cannot be considered accidental. We conclude that Article 1004, as presently written, represents an intentional legislative determination that State action, through the district attorney or the Department, is required to terminate a parent's right to the care and custody of his or her child. We hold that the present proceeding was improperly filed and cannot be maintained as a private action.
This does not require dismissal of the action, however. We agree with Cathy and the Department that this case presents the type of situation contemplated by Article 1004 E. That is, a situation in which it has come to the court's attention by some means (here by a pleading filed by an interested person) that an action to terminate parental rights may be appropriate. Although 1004 E does not authorize the court to allow a private individual to file a termination petition, we find that it gives the court the authority to order the State to institute termination proceedings against one or both parents. In accordance with subsections A through D, such an order may be directed to the district attorney or the Department, depending upon the circumstances presented and the customary practices of the local child welfare officials.
In the present case, the grounds asserted for terminating Daren's and Tina's parental rights is their abandonment as provided in Article 1015(9). Accordingly, under Article 1004 C, the Orleans Parish District Attorney may designate Cathy's counsel to proceed on *243 the State's behalf, and her petition may be amended to reflect that change in the petitioning party. Alternatively, the Department has been expressly authorized in 1004 D to institute a termination action based upon abandonment without regard to a prior custody order. Since Cathy's desire to adopt D.G.C. will necessitate eventual Department involvement, see, e.g., Article 1229, the court may find a substitution of parties under this provision more appropriate.
For these reasons, we vacate the judgment below and remand the matter for the court to order that the State, through the District Attorney or the Department of Social Services, be substituted as the petitioner in these proceedings.
JUDGMENT VACATED; MATTER REMANDED WITH INSTRUCTIONS.
NOTES
[1] In order to protect the minor child's rights to confidentiality and privacy, she will be identified solely by her initials, while others will be identified by their first names for easier reading.
[2] The affidavit also instructed the New Orleans Police Department to assist Daren in enforcing her instructions.
[3] As no clocked copy of this pleading was provided to this court, we are unable to determine if it was filed before, or simultaneously with, the petition at issue here.
[4] The record does not support this allegation. Rather, it appears that on an unknown date or dates, Tina signed a page from a stenographer's pad which stated D.G.C. had been voluntarily given up, followed by the names, addresses and phone numbers of nineteen other people, some of which appear to have been written by one person.
[5] Although the hearing transcripts and judgments indicate that Daren filed a writ of habeas corpus, no such pleading or related memoranda were included in the record furnished to this court.
[6] According to Daren's memoranda on this issue, Cathy had permitted him to visit his child almost daily until he was jailed in August 1989. While incarcerated, he allegedly mailed cards to D.G.C. and Tina sent him photos of his child. After his release in November 1993, Daren asserts he visited the child "at least once, and occasionally two or three times per month" until April 1995, when Cathy refused to permit him any more visits with D.G.C.
[7] On June 18, 1996, this court declined to exercise its supervisory jurisdiction in response to Tina's writ application, 96-C-1271, which addressed only the issue of whether, as a matter of law, she could be found to have abandoned her child.
[8] Title XII provides for termination of the rights of certain fathers in conjunction with an adoption proceeding. La. Ch.Code Ann. art. 1193 et seq. Since neither parent in this case has given consent, adoption proceedings cannot be instituted by Cathy unless and until this action to terminate parental rights has been concluded.
[9] Although not a party to this writ application, the mother was allowed to submit a brief because of her obvious interest in this matter.
[10] Until this statute was amended by 1984 La. Acts No. 535, apparently in response to dismissal of such cases by several appellate courts, private individuals had no express right to seek a judicial declaration of abandonment. See In re Allain, 407 So.2d 767 (La.App. 1st Cir.1981); Wheat v. Street, 428 So.2d 930 (La.App. 1st Cir.1983); State in re Bartee, 446 So.2d 512 (La.App. 4th Cir.), writ denied, 450 So.2d 358 (La.1984) and other cases cited therein.
[11] Section 6 of 1992 La. Acts No. 705 specified that the revisions were remedial "and shall be applied retroactive to January 1, 1992."