# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of January, 2016**, are as follows:

**BY GUIDRY J.**:

2015-CJ-1429        THE STATE OF LOUISIANA IN THE INTEREST OF K.C.C. (Parish of Jefferson)

Accordingly, we find the court of appeal erred in reversing the juvenile court's ruling denying the exception of no right of action filed by the parents. The court of appeal's judgment is reversed in part and the matter is remanded to the court of appeal for consideration of the parents' assignments of error pretermitted by the appellate court.
REVERSED and REMANDED.

HUGHES, J., concurs with the result.

SUPREME COURT OF LOUISIANA

No. 2015-CJ-1429

THE STATE OF LOUISIANA IN THE INTEREST OF K.C.C.

ON APPLICATION FOR WRIT OF CERTIORARI
TO THE COURT OF APPEAL
FIFTH CIRCUIT, PARISH OF JEFFERSON

**GUIDRY, J.**

In this termination of parental rights case, the court of appeal overruled the judgment of the juvenile court and sustained the biological parents' peremptory exception of no right of action, on the basis the couple having custody of the child did not possess a private right of action to petition for termination of parental rights under La. Ch. Code art. 1004. For the reasons set forth below, we find the appellate court erred in concluding the petition was improperly brought by private counsel for the custodians upon approval of the juvenile court.

**FACTS**

The child, K.C.C., was born at 3:03 a.m. on March 1, 2013, to his biological mother, T.T. The biological father, M.M., T.T.'s former boyfriend and the father of her then one-year-old child, M., had expressed doubts about the paternity of K.C.C. According to the nurse's notes made at 5:30 a.m., T.T. had communicated her interest in an open adoption. At some point thereafter, an adoption agency became involved, according to the hospital's discharge planning form. M.M. arrived at the hospital around 8:00 a.m. to pick up M, but remained of the belief that he was not the child's father. He called S.S., a former girlfriend, to ask if she or anyone she knew could take care of the child temporarily, because if the child

1

were his, he wanted to maintain access to the child at some future date. S.S. called her cousin, G.J., who eventually spoke with both T.T. and M.M., and learned they both wanted to give the child up for adoption. G.J. then conveyed this information to her brother, E.C., who along with his wife, K.C., had been wanting a child. E.C. and K.C., the Cs, agreed to adopt the child, and proceeded to the hospital. Before doing so, E.C. spoke with M.M., who informed him that T.T. did not intend to keep the child. At the hospital, according to E.C., T.T. assured them she wanted to give the child to them. M.M. returned to the hospital at some point that afternoon, around 3 or 4 p.m. After discussing names for the child, E.C. executed the "father" portion of the birth certificate, while T.T. executed the "mother" portion. The nurse's notes made at 4:06 p.m. indicated that T.T. had changed her mind about adoption, and the baby would go with the father.

Two days later, on March 3, 2013, T.T. and K.C.C. were discharged from the hospital. K.C.C. went home with the Cs that day, after the Cs took T.T. to her sister's home. Whether T.T. intended a permanent or temporary transfer of K.C.C.'s custody has been disputed, but is ultimately not relevant to our resolution of the procedural issue in this case. However, on April 9, 2013, T.T. executed a power of attorney drafted by K.C., which granted to the Cs all of her powers and parental rights regarding the care and custody of K.C.C.. and provided that the rights, powers, and authority granted would remain in full force until the child's 18th birthday. The document was signed by T.T., E.C., and K.C., and notarized. Approximately one month later, after T.T.'s relationship with the Cs had soured, T.T. executed a notarized document revoking the power of attorney, although she never informed the Cs of the revocation.

Several months later, in October of 2013, the Cs instituted adoption proceedings, filing a petition for intra-family adoption in the Jefferson Parish Juvenile Court, based on E.C. being listed as the child's father on the birth certificate. However, in January 2014, a DNA test revealed that M.M. could not be excluded as the father of K.C.C. Thus, on February 3, 2014, the petition for intra-family adoption was dismissed. The next day, the Cs filed a "Petition for Custody and Request for Permission to Petition for Termination of Parental Rights" in the 24th J.D.C.

On March 3, 2014, the Cs filed a "Petition for Termination of Parental Rights" in the juvenile court. That petition sought termination of parental rights under La. Child. Code art. 1015(4) for abandonment, and alleged that T.T. and M.M. had made no attempt to establish a relationship with K.C.C., nor had they provided any support for the child. The petition acknowledged that a blood test had verified that M.M. was K.C.C.'s biological father. On March 7th, T.T. filed exceptions of no right of action and no cause of action in juvenile court, asserting *inter alia* that the Children's Code did not confer upon non-parents such as the Cs a right of action to terminate parental rights, especially where the non-parents are the cause of the separation between parent and child. On March 12th, counsel for the Cs, Tilton Hunter, Jr., filed a "Motion for Leave of Court to File a Petition for Terminate [sic] of Parental Rights." The juvenile court on March 13th "ordered that Tilton R. Hunter, Jr., is hereby granted leave of court to file a Petition for Termination of Parental Rights pursuant to Children's Code Article 1004(A)." On the same date, the juvenile court overruled the biological parents' exceptions of no cause of action and no right of action. Thereafter, the juvenile court appointed an attorney, Melissa Berniard, to represent K.C.C. in the proceeding. The matter proceeded to trial on the "Petition for Termination of Parental Rights," after which

the juvenile court found the child had been abandoned under La. Child. Code art. 1015(4), terminated the parental rights of T.T. and M.M. and certified K.C.C. as available for adoption.

The court of appeal reversed the juvenile court's ruling on the exception of no right of action and remanded the matter to the juvenile court for further proceedings. *State in the Interest of K.C.C.*, 15-84 (La. App. 5 Cir. 5/28/15), 171 So.3d 390. The court of appeal reasoned that La. Ch. Code art. 1004(A) is limited to action taken on the court's own motion and does not allow the parties to seek leave to petition under this section. Further, the court of appeal, although it acknowledged the Cs could have filed their petition pursuant to La. Ch. Code art. 1004(F), nevertheless found that they had filed their petition under La. Ch. Code art. 1004(A). The court of appeal majority also cited policy reasons for disallowing private parties to seek leave of court to bring termination of parental rights actions, noting the balancing of the important rights of parents and the best interest of the child. The Cs and the attorney for K.C.C. jointly sought writs of review in this court. We granted the writ application to review the correctness of the court of appeal's judgment. *State in the Interest of K.C.C.*, 15-1429 (La. 9/11/15), ___ So.3d ___, 2015 WL 5662697.

**LAW AND ANALYSIS**

The issue presented is whether the Petition to Terminate Parental Rights was properly brought by Mr. Hunter, private counsel for the prospective adoptive parents, with leave of the juvenile court. Because resolution of this issue involves the applicability and interpretation of La. Ch. Code art. 1004, this case presents us with a question of law, which requires *de novo* review. *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 06-0582, p. 9 (La. 11/29/06), 943

4

So.2d 1037, 1045. Applying this standard of review to the instant matter, we find the court of appeal erred in reversing the juvenile court's ruling on the exception of no right of action.

Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest, which he asserts. La. Code Civ. Proc. art. 681. *See also Reese v. State Department of Public Safety and Corrections*, 03-1615 (La. 2/20/04), 866 So.2d 244, 246. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. *Id.* (citing La. Code Civ. Proc. art. 927). The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, but it assumes the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. *Id.* For purposes of the exception, all well-pleaded facts in the petition must be taken as true. *Miller v. Thibeaux*, 14-1107, pp. 6-7, (La. 1/28/15), 159 So.3d 426, 430.

In determining whether the petition was properly brought by counsel for the Cs, we turn to the Children's Code itself, particularly Article 1004. As the appellate court noted, this article delineates the exclusive procedures for instituting a petition for the involuntary termination of parental rights. La. Ch. Code art. 1004, entitled "Petition for termination of parental rights; authorization to file," provides in pertinent part as follows:

> A. At any time, including in any hearing in a child in need of care proceeding, the court on its own motion may order the filing of a petition on any ground authorized by Article 1015.

* * *

5

F. By special appointment for a particular case, the court or the district attorney may designate private counsel authorized to petition for the termination of parental rights of the parent of the child on the ground of abandonment authorized by Article 1015(4).[1]

The Cs contend the court of appeal erred in ruling that private parties, through private counsel, lack standing to initiate and pursue termination of parental rights actions for abandonment, when the Louisiana legislature has clearly shown its intent to allow such parties to do so with leave of court by adopting La. Ch. Code art. 1004(F). Thus, they contend they are proper parties with a right to bring this action. T.T. contends the Cs do not have the authority to file privately an action to terminate parental rights. They argue Art. 1004(F) does not provide that an individual or his counsel may institute a termination proceeding. Instead, the article gives authority only to the court or the district attorney to delegate certain roles. T.T. maintains there is no procedure within Title X of the Children's Code for a privately filed termination of parental rights action. To allow such private actions, she argues, interferes with the parent's "paramount right" to raise her children and to make decisions as to "where and with whom the child shall reside," and circumvents the formalities and procedures required by the legislature for

---

[1] The grounds warranting involuntary termination based on abandonment of a child are found in La.Ch. Code art. 1015(4)(b) and (c), which states:

> (4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> ....
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six connective months.

The burden of proof is on the petitioner who must establish "each element of a ground for termination of parental rights by clear and convincing evidence." La. Ch. Code art. 1035. Of paramount concern in any case involving the termination of parental rights, is the best interest of the child. *See* La. Ch. Code arts. 1001, 1037(B), and 1039(B).

private adoptions, formalities that are intended to secure informed consent and the best interest of the child.

We find the legislative history behind La. Ch. Code art. 1004 evidences an attempt by the legislature to broaden the class of persons who may instigate a petition for termination of parental rights. The involuntary termination of parental rights falls within Title X of the Children's Code, and is entitled "Judicial Certification of Children for Adoption." The purpose of this title is to "protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption." La. Ch. Code art. 1001. In all proceedings under this Title, "the primary concern is to secure the best interest of the child if a ground justifying termination of parental rights is proved." *Id.* Termination of parental rights is the first step toward permanent placement of the child in a safe and suitable home. *Id.* "The procedural provisions of this Title shall be construed liberally." *Id.*

In 1948, the Louisiana legislature first recognized termination of parental rights, but limited it to "abandoned" children. Acts 1948, No. 227 (enacting former La. Rev. Stat. 9:403).[2] The abandonment statute initially authorized only a state

---

[2] La. Rev. Stat. 9:403 provided in part as follows:

> A. If any child has been deserted for a period of at least four months by his parent and the whereabouts of his parent are unknown and the parent has made no provision for the child's care, or the parent has refused to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid all parental responsibilities, the child shall, after proceedings as hereinafter set forth, be considered an abandoned child.
> …
> B. An affidavit may be made by an agency, or an officer of the court, before the judge or clerk of the juvenile court having jurisdiction over the child setting forth in general terms the facts constituting abandonment and the place of residence of the parent of the child if known to the deponent. The judge shall then by order fix

agency or an officer of the court to initiate the action by affidavit before the juvenile court.[3] *See State in the Interest of Bartee*, 446 So. 2d 512 (La. App. 4th Cir. 1984)(holding that a private individual cannot institute a termination of parental rights proceeding and inviting the legislature to reform the abandonment statute), *writ denied*, 450 So.2d 358 (La. 1984). Additional grounds justifying termination of parental rights were enacted in 1974. Jack Harrison, <u>Louisiana Children's Code Handbook</u> p. 504 (West 2016)(citing Acts 1974, No. 566; La. Rev. Stat. 13:1600 *et seq.*, repealed by Acts 1991, No. 235, § 17, eff. Jan. 1, 1992). Still, an action to terminate parental rights could be instituted only by the State acting through a district attorney or his designate, which could be an attorney for the Department. La. Rev. Stat. 13:1601, repealed by 1991 La. Acts No. 235, § 17.[4] These proceedings were employed in cases involving "an abused, neglected, or

---

a time and place for the hearing of this matter not less than sixty days after the date of the order. …

[3] The following individuals have been deemed officers of the court: the Clerk, Deputy Clerks, the Minute Clerk, Sheriff, Constable or Marshal, Crier, Court Reporter, Court Appointed Expert and Attorneys. *See* La. Code Civ. Proc. arts. 251-375.

Whether an attorney could initiate termination proceedings by affidavit as an officer of the court and then turn over the prosecution of the petition to the paternal grandparents was considered in *In re Fischbein*, 194 So.2d 388 (La. App. 4th Cir. 1967), holding the grandparents could not appear as petitioners in the proceeding because there was no private right of action. The court, nevertheless, did not dismiss the action on that basis, recognizing the action could be maintained due to the nominal appearance of the attorney as an officer of the court. 194 So.2d at 390. *See also* La. Ch. Code art. 1004, Comments – 1991 (explaining that prior to the enactment of the Children's Code, an "officer of the court" could file an abandonment affidavit without leave of court.). Ultimately, the *Fischbein* court found insufficient proof of abandonment. *Id.* at 392-93.

[4] La. Rev. Stat. 13:1601 provided as follows:

The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsections A, B, C, D, E, or F, of this Section. The district attorney may appoint any attorney representing the Department of Health and Human Resources as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.

other child within a juvenile court's jurisdiction," including those children who had been in the legal custody of the department for specified periods of time. *Id.*

Perhaps in response to *Bartee*, the legislature subsequently amended the former La. Rev. Stat. 9:403 in 1984 to permit, with the court's approval, a private individual or a residential child-caring institution lawfully exercising physical custody to file the abandonment action. Acts 1984, No. 535; La. Rev. Stat. 9:403 B, repealed by 1991 La. Acts No. 235, § 17; *see also* Harrison, p. 504. Consequently, for children who had been abandoned or deserted by a parent or parents, a judicial declaration of abandonment could be sought "by an agency, private individual, residential child-caring institution ..., or an officer of the court." La. Rev. Stat. 9:403 B, repealed by 1991 La. Acts No. 235, § 17. Nonetheless, a private individual or residential institution seeking to have a child declared abandoned had to obtain leave of court and show good cause prior to proceeding. *Id.* In all cases, the initiating affidavit had to be served on the department, which was required to prepare a report for the court. *Id.*

The Children's Code was enacted in 1991 principally "to gather together all of the laws affecting the exercise of juvenile court jurisdiction" previously scattered within the Revised Statutes and the Code of Juvenile Procedure. Lucy S. McGough, The Drafting of the Children's Code, 1 Louisiana Children's Code Handbook, pp. xi, xvi (West 2016). The intention of the drafters was "a true code, an internally consistent, harmonious set of substantive principles and procedures ... for any proceeding within the juvenile court's jurisdiction." *Id.* at xvii-xix. A goal of the drafters was "to resolve ambiguity and to reconcile often conflicting laws…," such as "in the differences in the standing requirements and procedure governing abandonment proceedings and termination of parental rights cases…."

*Id.* at xvii-xviii; *see also* Comment, *Involuntary Termination of Parental Rights in Louisiana: Unraveling the Statute*, 58 Tul. L. Rev. 1045 (1984)(critiquing the pre-Code statutes as poorly drafted).

As a result of this consolidation and attempted reconciliation, Article 1004 was originally enacted, effective January 1, 1992, as follows:

> A. The district attorney or the department when a child has been placed in its custody for at least eighteen months may petition for the termination of parental rights of the parent of the child.
>
> B. The court on its own motion, may order the filing of a petition.

1991 La. Acts No. 235, § 10.

In the Official Comments – 1991, the scope of the court's authority in Paragraph B to permit persons other than the district attorney or the department to initiate termination proceedings was explained:

> Under prior law, a private individual had no authority to file a termination of parental rights petition. R.S. 13:1601. However, an abandonment action could be initiated by affidavit by a "private individual" or by a private "residential child-caring institution lawfully exercising physical custody of the child at issue" with leave of court. R.S. 9:403(B)(1) and (2). (An "officer of the court" could file an abandonment affidavit without leave of court.) Paragraph B strikes a balance between the two conflicting source statutes. It requires that approval of the court must be obtained in the form of a court order before an action seeking termination of parental rights is filed on any ground by anyone other than a representative of the district attorney or the department.

The Legislature revisited Article 1004 in 1992, and amended it as follows:

> A. The district attorney may petition for the termination of parental rights of the parent of the child.
>
> B. By special appointment, the district attorney may designate counsel for the department as a special assistant authorized to petition for the termination of parental rights of the parent of the child.
>
> C. By special appointment for a particular case, the district attorney may designate counsel as a special assistant authorized to petition for the termination of parental rights of the parent of the child

on grounds authorized by Article 1015(8), desertion of the child, Article 1015(9), abandonment of the child, and Article 1015(10), failure to maintain contact with the child.

D. When a petition alleges grounds authorized by Article 1015(8), desertion of the child, or Article 1015(9), abandonment of the child, the department may petition for the termination of parental rights of the parent of the child. In cases involving all other grounds authorized by Article 1015, the department may petition for the termination of parental rights of the parent of the child when a child has been placed in its custody for at least eighteen months.

E. The court on its own motion may order the filing of a petition.

Acts 1992, No. 705, § 1, eff. July 6, 1992.

The Official Comments – 1992 explained that the amendments reinstated the authority of the district attorney to appoint department counsel as a special assistant and the authority of the department to initiate termination of parental rights proceedings on abandonment grounds. The 1992 amendments also allowed the district attorney to appoint private counsel as a special assistant authorized to petition for the termination of parental rights on various grounds, including abandonment. La. Ch. Code art. 1004, Official Comment – 1992.

In 1997, the Fourth Circuit was called upon to determine whether a private individual could request leave of court to file a petition for termination of parental rights pursuant to Art. 1004(E) (1992). *In the Interest of D.G.C.*, 96-1093 (La. App. 4 Cir. 2/26/97), 690 So.2d 237. In that case, the biological mother had given the child to the petitioner shortly after its birth. Without any formal arrangement, the petitioner had cared for the child for some five years until the biological father sought custody. In response, the petitioner filed a "Motion for Leave of Court to File Termination of Parental Rights" and a "Petition for Termination of Parental Rights" in the juvenile court. These pleadings alleged the mother had given custody of D.G.C. to the petitioner "before a notary and 19 witnesses" and that

neither parent had made any attempt to contact the child since birth. *D.G.C.*, p. 2, 690 So.2d at 238. Asserting both parents had demonstrated their intent "to permanently avoid parental responsibility" by their failure to care for and support D.G.C., the petition prayed "[t]hat after all due proceedings be had, there be judgment herein in the best interests of the child, and in favor of the State of Louisiana and against the parents, ... granting the petition and permanently terminating the rights of the parents to their child." *Id.* The juvenile court granted the motion for leave and ultimately terminated the parental rights of the biological parents. *D.G.C.*, p. 3, 690 So.2d at 238.

The court of appeal reversed. The *D.G.C.* court rejected the petitioner's argument that she could proceed with the action based on the 1991 Comment to the original Art. 1004(B), which had explained that, with approval of the court, a person other than the district attorney or the department could seek termination of parental rights on any ground. *D.G.C.*, p. 5, 690 So.2d at 239. The court of appeal pointed out the Comments are not law, citing La. Ch. Code art. 111. Nevertheless, the court relied on the 1992 revision comments, even though Paragraph B of the La. Ch. Code art. 1004 (1991) and Paragraph E of La. Ch. Code art. 1004 (1992) are identical. The *D.G.C.* court noted that the 1992 Comment explained that the 1992 amendments permitted counsel for private parties, with the approval of the district attorney, to be specially designated to bring an abandonment action. The court reasoned that, after the 1992 amendment, the only explicit reference to the right of a private individual to act in termination proceedings is found not in the law, but in an explanatory Comment, which refers to a private individual acting as the district attorney's designate on behalf of the State. *D.G.C.*, pp. 9-10, 690 So.2d at 241-42. The court reasoned the failure to specify that a private individual has authority to institute termination proceedings, and under what circumstances, could

not be considered accidental. *Id.* The court concluded Article 1004, as amended in 1992, represented "an intentional legislative determination that State action, through the district attorney or the Department, is required to terminate a parent's right to the care and custody of his or her child." *D.G.C.*, p. 11, 690 So.2d at 242.

Although the *D.G.C.* court held the petition for termination was improperly filed and could not be maintained as a private action, it nonetheless opined the action need not be dismissed. *D.G.C.*, p. 11, 690 So.2d at 242. The court reasoned that Paragraph E contemplates a situation in which it has come to the court's attention by some means (here by a pleading filed by an interested person) that an action to terminate parental rights may be appropriate. However, the *D.G.C.* court found La. Ch. Code 1004(E) does not authorize the juvenile court to allow a private individual to file a termination petition; instead, it gives the court the authority only to order the State through the district attorney or the department to institute termination proceedings against one or both parents. *D.G.C.*, pp. 11-12, 690 So.2d at 242. The court also found that, under Paragraph C, the district attorney could designate the petitioner's private counsel to proceed on the action, merely by amending the petition to reflect the change in the petitioning party. [5] *D.G.C.*, p. 12, 690 So.2d at 242-43.

Apparently in response to *D.G.C.*, the Louisiana legislature again amended La. Ch. Code art. 1004, this time to specify that the juvenile court also has the authority to designate private counsel to initiate termination of parental rights proceedings on the grounds of abandonment. La. Ch. Code art. 1004(F). As amended, the article provided as follows:

---

[5] We summarize the reasoning and holdings of the court in *D.G.C.* to show the state of the jurisprudence at the time the legislature amended La. Ch. Code art. 1004, and thus take no position on whether any of the reasoning or holdings of the court in *D.G.C.* were correct.

A. At any time, including in any hearing in a child in need of care proceeding, the court on its own motion may order the filing of a petition on any ground authorized by Article 1015.

B. Counsel appointed for the child pursuant to Article 607 may petition for the termination of parental rights of the parent of the child if the petition alleges a ground authorized by Article 1015(4), (5), or (6) and, although eighteen months have elapsed since the date of the child's adjudication as a child in need of care, no petition has been filed by the district attorney or the department.

C. The district attorney may petition for the termination of parental rights of the parent of the child on any ground authorized by Article 1015.

D. The department may petition for the termination of parental rights of the parent of the child when the child has been abandoned and termination is authorized by Article 1015(4), when as a result of a prior child in need of care disposition, termination is authorized by Article 1015(5), or when the child is in foster care because the parent is incarcerated and termination is authorized by Article 1015(6).

E. When termination is authorized by Article 1015, other than on the grounds specified by Paragraph D of this Article, by special appointment, the district attorney may designate counsel for the department as a special assistant authorized to act in his stead in all such termination actions or in a particular case.

F. By special appointment for a particular case, the court or the district attorney may designate private counsel authorized to petition for the termination of parental rights of the parent of the child on the ground of abandonment authorized by Article 1015(4).

Acts 1997, No. 256, §1.

The 1997 amendments substantially revised and reorganized Art. 1004 "to emphasize that the court has the primary authority and responsibility to oversee the initiation of termination of parental rights proceedings." La. Ch. Code art. 1004, Comment (a), Comments – 1997. Notably the court's authority to order institution of termination proceedings is now found in Paragraph A, which recognizes that evidence of parental misconduct introduced in child in need of care cases could be so egregious as to constitute grounds for the immediate termination of parental rights. La. Ch. Code art. 1004, Comment (b), Comments – 1997. Most pertinent to our resolution of the issue before us is the addition of Paragraph F, which

14

specifically allows the court, by special appointment in a particular case, to designate private counsel authorized to petition for the termination of parental rights on the ground of abandonment set forth in La. Ch. Code art. 1015(4). The Revision Comment explains that "Paragraph F clarifies the fact that the court, as well as the district attorney, may authorize private counsel to initiate a termination case based on the ground of abandonment."

This history, culminating in the legislature granting the juvenile court the specific power to authorize private counsel to initiate a termination of parental rights proceeding on the ground of abandonment, convinces us that the legislature has intentionally broadened the classes of persons who may bring a termination of parental rights action.[6] *See also* Harrison, pp. 515-517. Under a plain reading of the article, counsel for the Cs falls squarely within that class identified in La. Ch. Code art. 1004(F). Here, the original petition, filed by the Cs, was subject to a challenge on no right of action grounds, because the Cs themselves were not authorized to bring the action under Paragraph F of the article. *See, e.g., S.J.G. v. A.A.G.*, 07-0625 pp. 9-10 (La. App. 1 Cir. 9/19/07), 970 So.2d 1022, 1027 (holding there is no private right of action to bring termination proceedings by one parent against the other and finding trial court had not followed proper procedures of La. Ch. Code art. 1004, because the court had not authorized special private counsel to bring such a petition). However, that lack of authority in the instant case was cured when counsel for the Cs moved to be designated as special counsel to assert the termination action on grounds of abandonment, and the juvenile court so

---

[6] Indeed, the legislature added Paragraph G to La. Ch. Code art. 1004 in 2001 specifying that foster parents who intend to adopt the child may bring an action to terminate parental rights, but only if the department has failed to act and with certain time limitations. Acts 2001, No. 567, § 1; *see* La. Ch. Code art. 1004, Comments – 2001. Similarly, the legislature allows "any interested person" to initiate an action to terminate parental rights, either through the district attorney or, if the district attorney does not act, on his own, though this is limited to situations set forth in La. Ch. Code art. 1015(1) (conviction of murder of the child's other parent) and (2) (unjustified intentional killing of the child's other parent). La. Ch. Code art. 1004(H); Acts 2005, No. 80, § 1.

ordered. While it is true counsel's motion and the order itself referenced Paragraph A, the juvenile court's reasons for judgment recognized the termination action was initiated under the authority allowed it pursuant to Paragraph F. Thus, we find the juvenile court properly overruled the exception of no right of action.

We recognize that courts interpreting La. Ch. Code art. 1004(F) have questioned the wisdom of allowing private counsel for an interested party to bring an action to terminate parental rights, especially where the interested party is the other parent. *See In re T.E.R.*, 43,145 (La. App. 2 Cir. 3/19/08), 979 So.2d 663 (recognizing the language of La. Ch. Code art. 1004(F), permitting appointment of private counsel to bring termination actions based upon abandonment, does not prohibit the appointment of one parent's counsel to seek termination of the other parent's parental rights, but declining to allow such in the absence of specific indication from either the legislature or this court); *In re H.R.K.*, 980 So.2d 200 (reversing juvenile court's ruling sustaining the exception of no cause of action, thus applying La. Ch. Code art. 1004(F) to permit appointment of private counsel of one parent to bring the termination action against the other parent, albeit with the concern that such proceedings lack the lengthy protective measures usually undertaken by the State, but nevertheless finding insufficient proof of abandonment); *State in the Interest of D.M.*, 00-0451 (La. App. 4 Cir. 3/14/01), 785 So.2d 857 (recognizing the juvenile court's authority to appoint private counsel as special counsel under La. Ch. Code art. 1004(F), but finding the article inapplicable because the ground for termination of parental rights was not abandonment, but the crime of rape). The lower court in the instant case was concerned about balancing the rights of the parents and the best interest of the child when the petitioner seeking termination may have interests averse to reunification of the family. We are not unaware of those concerns, but leave it to

the discretion of the juvenile courts to determine whether to authorize private counsel, by special appointment in a particular case, to petition for the termination of parental rights. The juvenile court retains its authority under La. Ch. Code art. 1004(A) to order the State, through either the department or the district attorney, to file the petition for termination of parental rights, mindful of the overarching purpose of Title X to protect children and to secure their best interest. La. Ch. Code art. 1001.

## CONCLUSION

After reviewing the applicable law, Title X of the Children's Code and La. Ch. Code art. 1004(F), we hold that private counsel in a particular case may be specially appointed, by approval of the court, to pursue the termination of parental rights due to abandonment under La. Ch. Code art. 1015(4). Accordingly, we find the court of appeal erred in reversing the juvenile court's ruling denying the exception of no right of action filed by the parents. The court of appeal's judgment is reversed in part and the matter is remanded to the court of appeal for consideration of the parents' assignments of error pretermitted by the appellate court.

## REVERSED and REMANDED

**SUPREME COURT OF LOUISIANA**

**NO. 2015-CJ-1429**

**THE STATE OF LOUISIANA IN THE INTEREST OF K.C.C.**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON**

Hughes, J., concurs with the result.