JjCOOKS, Judge.
The maternal aunt and uncle of the minor child, C.F., appeal the trial court’s judgment denying their right to file a petition for termination of the biological father’s parental rights. For the following reasons, we reverse.
FACTS
C.F. was born on August 26, 1994. On December 15, 1994, C.F. was adjudicated a “Child in Need of Care.” He was maintained in the custody of the State and placed in the care of Appellants. Shortly after birth, an investigation by the Child Protection Investigative Unit revealed both of the child’s parents were crack cocaine and marijuana users. His maternal aunt and uncle (hereafter referred to as Appellants) have had physical custody of C.F. since birth, with the exception of a trial placement with the child’s father between October 1995 and August 1996.
A dispositional review hearing held in October 1995 resulted in placement of the child with the father for a trial period. During this period, the father was charged with a DWI and he failed to report it to the case manager. After his random drug screen tested “cold,” C.F. was returned to the home of Appellants. Another review hearing was held in December 1996, at which the father sought custody and the State recommended the Appellants be awarded permanent custody of the child. The State based its recommendation on its supervision of the case, the home studies of the parties, the father’s failure to respond to drug counseling, and his apparent indifference to the State’s efforts to reunify the family.
*924 The trial court denied the father’s request for custody and ordered full and permanent custody of C.F. to the Appellants, with visitation of one week each month to the father. An appeal was instituted by the father. This court In the Interest of Colby Fowler v. Robert Fowler, 98-953 (La.App. 3 Cir. 12/9/98), 722 So.2d 125, amended the judgment of the trial court and placed C.F. in permanent foster care with the Appellants.
On November 5, 1999, Appellants filed a petition seeking termination of the father’s parental rights, specifically announcing their intent to adopt the minor child. Appellants relied on La.Ch.Code art. 1004(G) as granting the authority to file their petition. Subsection (G) was added by Act 1067 of the 1999 regular session of the Louisiana Legislature. It provides:
Foster parents who intend to adopt the child may petition for the termination of parental rights of the foster child’s parents when the child has been in state custody under their care for a continuous period of fifteen months and the department has failed to petition for such termination.
The father filed an Exception of No Right or Cause of Action. At the hearing on the exception the trial court identified three issues before it: (1) Who is custodian of C.F.; (2) should appellants be held in contempt of court for the failure to allow the father to have visitation; and (3) do Appellants have a right or cause of action to terminate the father’s parental rights.
The trial court concluded our decision In the Interest of Colby Fowler, supra, granted custody of C.F. to the State. The trial court did not hold Appellants in contempt of court because it found the State did not make and supervise a case plan that included visitation. On this issue the trial court reasoned a caretaker (Appellants in this situation) has no authority to grant or deny visitation, except as contained in a case plan approved by the State. Lastly, the trial court found Appellants were not entitled to file a petition for termination. The trial court determined the State had not “failed” to act within the meaning of article 1004(G) and also found Appellants were not technically foster parents as they were never state certified as such nor were they participants in the state’s foster care system.
The trial court then dismissed the petition for termination. The State was [■¡ordered to reopen its file on C.F., assign a case worker and prepare a permanent case plan for the court’s approval within thirty days. The trial court concluded placement of the child may not be changed unless the State shows, at a contradictory hearing, such a change is in the best interest of C.F. Appellants filed this appeal asserting, as their lone assignment of error, the trial court erred in dismissing their petition for termination. The father also appealed, arguing the trial judge erred in approving a case plan that failed to provide a goal of reunification.
ANALYSIS
Appellants contend La.Ch.Code art. 1004(G), grants them the independent right to file a petition seeking termination of the father’s parental rights in this instance because they have had continuous custody of C.F. well in excess of the required fifteen months and the state has not filed a petition.
Historically, an action to terminate parental rights could be instituted only by the State acting through a district attorney or his designate. In the Interest of D.G.C., 96-1093 (La.App. 4 Cir. 2/26/97), 690 So.2d 237. However, La.Ch.Code art. 1004(G) now allows a foster parent, who intends to adopt, to petition for termination when the state fails to do so. The comments indi *925 cate article 1004(G) was created in response to federal legislation. One of the primary goals of the referenced federal legislation is to ensure that children do not languish in permanent foster care. Although the comments note the amendment was not required by the Adoption and Safe Families Act of 1977, 42 U.S.C. § 601 et. seq., it nonetheless was prompted by this codified shift in federal policy. See, Comments Acts 1999, Nos. 449 and 1067.
The trial court held Appellants were not entitled to file a petition for termination for two reasons: First, it found the State had not “failed” to act within the meaning of article 1004(G); and, second, it concluded Appellants were not |4foster parents.
We find the trial court erred in holding Appellants cannot claim any “entitlement to a ‘foster parent’ position.” This court’s earlier judgment specifically placed C.F. in 'permanent foster care with Appellants. That judgment is final and grants Appellants the legal status of foster care parents.
In finding Appellants did not establish the State “failed” to act, the. trial court reasoned:
This court understands the word “failed” in G to mean the Department has done all that is required and within its authority and mandate to file, but has improperly failed to follow through and file a TPR. Thus, if the Department does not have authority to file, or the Department is relieved by a court or regulation or exempted from filing, then the Department has not “failed” to file and the foster parents cannot file. In such a circumstance, where time is the only factor left to the discretion of the foster parent, a foster parent willing to bear the cost of litigation can further the goals of the legislative effort to end foster care drift. The foster parent cannot be allowed, however, to usurp the discretionary decision making authority that rests with the Department to provide services to abused and neglected children and their families and to operate a foster care system.
In considering this concept of whether or not the Department has “failed,” this court believes their must be some consideration given to the fact that the mandate was only recently enacted. This new mandate has impacted every case on this court’s docket and every case with a previously approved “permanent foster care” disposition has been reexamined to determine compliance with the new TPR mandate.... This court knows there is a timetable for the review of old cases to ensure compliance with the new federal legislation. This court cannot say, however, how the present case would be viewed under the new criteria. Unless or until the Department has had an opportunity to review this case, this court cannot find the Department has “failed” to act within the meaning of 1004 G.
Thus, the trial court held it could not find the State has “failed” to act within the meaning of art. 1004(G) until it “has had an opportunity to review this case.” After a thorough review of the record, we find the State has had ample “opportunity to review this case,” but elected, without any legally justifiable reason, not to do so.
This court’s earlier opinion was rendered on December 9, 1998. The State | ¡¡implemented no plan and failed to provide any supervision in this case until November 13, 2000, when the trial court ordered it to reenter and file a case plan. When Appellants filed the petition to terminate parental rights, C.F. had been in their continuous custody for approximately 48 months. We also note the State has not filed any response to this appeal.
*926 It is clear our legislature intended to expand the right of foster parents who intend to adopt foster children. The State’s prolonged and unexplained failure to act in this case no doubt is one of the clogs in the system which prompted the legislature to enact 1004(G). The provision clearly grants foster parents, desiring to adopt a child, an independent right to initiate judicial proceedings to terminate a parent’s parental rights if the state fails to act within fifteen months. When a statute is clear and unambiguous and does not lead to absurd consequences, we shall apply it as written. La.Civ.Code art. 9; Touchard v. Williams, 617 So.2d 885 (La.1993); Bellard v. Omni Geographic, 00-717 (La.App. 3 Cir. 12/6/00), 773 So.2d 911.
Although we find Appellants have the right to file their petition for termination of parental rights, we express no opinion on the merits of such a petition. The father will have ample opportunity at the hearing to refute the appropriateness of termination.
Our ruling allowing Appellants to file the petition for termination renders the father’s assignment of error moot.
DECREE
For the foregoing reasons, the judgment of the trial court dismissing Appellants’ petition for termination is reversed.
REVERSED.