406 So.2d 687 (1981)
In re the Minor Tonja Rene WILDEBOER.
No. 14693.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1981.
*688 Kelly & Salim by Robert L. Salim, Natchitoches, for respondent-appellant, Richard L. Cotton.
Thomas & Dunahoe by Edwin Dunahoe, Natchitoches, for petitioner-appellee, Marion Wildeboer.
Horton & Jones by Donald G. Horton, Coushatta, curator ad hoc for Sheryl Faye Perry Cotton.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
*689 MARVIN, Judge.
The adoptive father of his former wife's illegitimate child appeals a judgment that annulled the adoption and awarded custody to the child's father who had informally acknowledged her.
Appellant contends that the trial court erred in finding that the father acknowledged the child, that the father did not have notice of the pending adoption, and that the father's consent to the adoption was not dispensed with under LRS 9:422.1. We affirm.
The child was born in 1971. The adoptive parents were married in 1973 and adopted the child in 1975. These parents were divorced in 1979 and the adoptive father was awarded custody of the child along with the custody of two other children of that marriage.
The blood parents cohabited until about four or five months before the child was born. When the child was a few weeks old, she was presented by the father, who was accompanied by the mother and paternal relatives, before the congregation and to an ordained minister of a church in a christening-type ceremony in the name of the father. The father was present in the hospital when the child was born and paid the expense of childbirth and furnished information for the registration of birth. The child bore the name of the father and he is shown as the father on the unofficial birth record of the hospital and on the official birth record of the state.
For about two years the child and her mother lived with the father's mother, near Campti, and the father's grandmother, near Coushatta, and was supported in most part by the father, who lived and worked elsewhere. After the appellant married the mother of the child in 1973, the contributions from the father and his family continued, but diminished to occasional gifts of clothing, toys, and small amounts of money. These gifts were usually channelled through the paternal great-grandmother, who remained in good stead with the maternal relations of the child who lived in the same community. The child periodically visited the paternal grandmother and great-grandmother and on many of these occasions was visited by her father. The child's visits were brief (two-three days) and occurred about 25 times over a period of about six years.
The child lived with her mother, appellant, and the two other children born of that marriage from 1973 until the appellant went overseas in military service in 1977. In late 1978, the mother, then residing in Oklahoma and apparently involved in an affair there, brought these three children to the home of appellant's mother near Coushatta, where they resided until the appellant returned home in 1979 to live nearby. On April 26, 1979, appellant was granted a divorce from his wife on grounds of adultery and was awarded custody of the three children.
When the adoption proceedings were filed in 1975, the child's father was living in Foxworth, Mississippi, and was working in Columbia, Mississippi. The report of the state agency to the court in the adoption proceedings contains these statements, which we have edited to replace private names with the designations used in this opinion:
"Information concerning the father of [the child] was obtained from [appellant's mother]. [The father], age 30, was born in Natchitoches ... and graduated from... High School. He attended Northwestern State University for three years and is employed in Columbia, Mississippi... His mother is a ... who lives in Campti and maintains contact with [the child]. [The parents] separated five months prior to the birth of [the child]. He is said to be in opposition to the adoption plans.

* * * * * *
"[The adoptive parents] were married on 4-13-73 in Red River Parish, (verified). [The blood parents] are said to have married on 5-22-69, in Juarez, Mexico. This marriage could not be verified."
Notwithstanding the knowledge of appellant's mother and of the father's relatives *690 in the community, neither appellant nor his wife, who were the joint petitioners for adoption, furnished any information about the name of the father or his whereabouts to the attorney appointed to represent the father. This attorney's letter and the answer in the adoption record clearly states the absence of such information and that he was unable to determine who the absentee father was or to contact him.
When the father learned of the divorce and investigated, he learned of the adoption. He then brought this action to annul the adoption on the grounds of lack of service (notice) and that the judgment of adoption was obtained by fraud and ill practices. CCP 2002, 2004, 1201. The mother was made a defendant. She did not testify or appeal the judgment. The child did not testify. Appellant's mother and paternal relatives of the child offered testimony. The father denied any knowledge of the adoption and there is no evidence to contradict his testimony. The trial court's conclusion in this respect is correct.
Unlike other sections of the adoption statute, LRS 9:425 makes no distinction between legitimate and nonlegitimate parents or between a parent who has acknowledged his child and one who has not. This section requires that a copy of the petition for adoption shall be served as in civil proceedings on each living parent of the child.[1] Service on an absentee may be accomplished through an attorney at law appointed for that purpose who is expressly charged with the duty of exercising reasonable diligence to communicate with the absentee about the pendency and the nature of the proceeding. The appointed attorney's failure to perform the duty may give rise to damages but does not affect the validity of a judgment against the absentee.[2] LRS 9:426, CCP 5094, 5098. See Milner v. Milner, 244 So.2d 716 (La.App.2d Cir. 1971). If information that would lead to the name and whereabouts of the absentee is deliberately withheld by a petitioner in an action, the judgment rendered in favor of the petitioner may be annulled on the grounds of fraud or ill practice. CCP 2004. Brasher v. Brasher, 372 So.2d 752 (La.App. 4th Cir. 1979).
Appellant and his wife, joint petitioners for adoption, in 1975, failed to inform the absentee father's appointed attorney in the proceeding of any information about the name or whereabouts of the absentee father. Appellant's mother, appellant's wife, and obviously the appellant himself, all of whom knew the name of the absentee and his relatives in the same rural community, could have easily furnished information to the appointed attorney from which could be ascertained the exact whereabouts of the absentee. The absentee father was maintaining contact with his relatives and, through them, with his child, during this time. The withholding of this information from the appointed attorney does not excuse the appointed attorney's failure to exercise diligence in attempting to locate and inform the absentee,[3] but we must conclude that the withholding was deliberate and constitutes grounds for annulling the judgment. CCP 2004.
Once the nullity of the adoption judgment is determined, this contest resolves itself into a custody dispute between the appellant, former step-father of the child, who was granted custody as an incident of his divorce, and the father of the child, born *691 illegitimate. Under these circumstances, we shall consider then the appellant's contentions that the father's actions are not sufficient to constitute a legal acknowledgment of the child under CC Art. 203. See also CC Art. 209.
The fact that others place the name of the father in the birth records of a child is not sufficient to constitute an acknowledgment under CC Art. 203. In Re Martin, 357 So.2d 893 (La.App. 1st Cir. 1978). Here, however, the father himself caused his name to be entered on the birth records, he was present at the time of birth and paid the expenses, he declared the child to be his in a church ceremony, and he provided some support and places of residence for the child and her mother for about two years following birth. These actions, when considered together, are sufficient in our opinion to constitute a legal acknowledgment of the child by the father. See CC Art. 209; Goins v. Gates, 93 So.2d 307 (La.App. 1st Cir. 1957); Ford v. Calhoun, 6 La.App. 350 (1927). Legal rights and obligations arise from the acknowledgment of an illegitimate child by a parent. We see no reason why the law should not recognize the parental rights of a parent who has acknowledged his illegitimate child when the law has recognized that parent's obligations. See Succession of Brown, 388 So.2d 1151 (La.1980); Creppel v. Thornton, 230 So.2d 644 (La.App. 4th Cir. 1970).
In a custody contest between a parent and a non-parent (here the former step-father of the child), the parent must prevail unless the record affirmatively shows the parent's unfitness or forfeiture of parental rights. In such circumstances, it is not proper merely to compare the parent's situation with that of the non-parent and award custody on the basis of the best interest of the child. Unfitness of or forfeiture by the parent must be expressly determined and well supported. Burt v. McKee, 384 So.2d 489, 491 (La.App.2d Cir. 1980). The lower court's judgment and reasons for judgment impliedly negate this father's unfitness or forfeiture of parental rights.
For reasons assigned here, and by the court below, and at appellant's cost, judgment is AFFIRMED.
NOTES
[1] "A copy of the petitioner together with all exhibits shall be served by registered mail on the department and on the agency having legal custody of the child. Two copies of the same petition need not be served on the department. Notice of the filing of said petition shall be served in the manner for service of process in civil proceedings, on each living parent of the child, unless the child has been legally surrendered or declared abandoned by a court of competent jurisdiction, in which event, the parents shall not be served."
[2] Appellee did not raise the issue of constitutional due process here or below and we do not reach that issue.
[3] We emphasize that it was the appellant's mother who informed the state investigating agency of the name and location of the absentee. This information was apparently known in the community and could have been obtained by the appointed attorney for the absentee.