# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-916


IN RE:  ALR AND BAR



**********


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 15-82
HONORABLE CURTIS SIGUR, DISTRICT JUDGE

**********

## CANDYCE G. PERRET
## JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and Candyce G. Perret, Judges.


**MOTIONS TO CONSOLIDATE AND CORRECT RECORD ARE DENIED; EXCEPTION OF RES JUDICATA DENIED; JUDGMENT AFFIRMED.**

**Edward Moses, Jr.**
**Attorney at Law**
**P. O. Box 83232**
**Baton Rouge, LA 70884**
**(225) 295-5632**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **S.R.**

**Shane Errol Romero, Jr.**
**Attorney at Law**
**110 E. Pershing St.**
**New Iberia, LA 70560**
**(337) 321-6945**
**COUNSEL FOR PLAINTIFFS-APPELLEES:**
    **C.R.**
    **M.R.**

**David Y. Lamm**
**Attorney at Law**
**P. O. Box 9710**
**New Iberia, LA 70562**
**(337) 321-6535**
**COUNSEL FOR APPELLEES:**
    **A.L.R.**
    **B.A.R.**

**PERRET, Judge.**

In this intrafamily adoption case, the trial court granted the petition for adoption filed by the biological father, C.R.,[1] and his wife, M.R. In granting the adoption, the trial court terminated the parental rights of S.R., the natural mother, finding that she failed to make child support payments for at least six months and that the adoption by the stepmother was in the best interest of the two minor children. For the following reasons, we affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY:**

The mother of the children, S.R., and their natural father, C.R., were married to each other in September 2001, and divorced on October 16, 2006. From their marriage, two girls were born: A.L.R. was born on March 13, 2000, and B.A.R. was born on March 31, 2004. On November 16, 2009, S.R. was ordered to pay child support to C.R. in the amount of $305.00 per month, effective November 1, 2009. On March 17, 2010, C.R. was awarded sole custody of the two minor children. At that time, S.R. was involved in a criminal proceeding, which resulted in her incarceration in the Lafayette and Vermillion parish jails from March 11, 2010 until November 15, 2010.

On April 14, 2007, C.R. married M.R., the minors' stepmother (collectively "the Plaintiffs"). On January 6, 2012, the Plaintiffs filed this intrafamily adoption suit alleging that S.R. failed to support her minor children without just cause for a period of six months and that she failed to communicate with the minor children without just cause for a period of six months. On March 22, 2012, the trial court granted the adoption finding that it is in the best interest of the children.

---

[1] The initials of the parties will be used to protect and maintain the privacy of the minor children involved in this proceeding. *See* Uniform Rules–Courts of Appeal, Rules 5-1 and 5-2.

However, on June 14, 2012, S.R. filed a Petition to Annul Final Judgment alleging that the Plaintiffs did not properly serve her with the adoption suit and that the judgment was obtained by fraud and ill practice. After a hearing on March 19, 2014, the trial court found that no service was ever attempted on the mother, C.R., and that the Plaintiffs failed to provide the appointed curator with information that would have been helpful in locating her. On May 22, 2014, the trial court signed the judgment that granted the Petition to Annul Final Judgment. In its reasons for judgment, the trial court did not find fraud; rather, the annulment was only to cure procedural defects and to allow S.R. the opportunity to object to the Plaintiffs' Petition for Intrafamily Adoption. Specifically, the trial court stated as follows (citations omitted):

> An ill practice justifying annulment of a judgment encompasses situations where the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, if the enforcement of the judgment would be unconscientious and inequitable, even though no actual fraud or intentional wrong is shown in the procurement of the judgment. The jurisprudence has considered conduct which unfairly prevents the opposing party from having his day in court to urge his defenses as an ill practice justifying annulment of a judgment so obtained.

> In this case, the Court does not find fraud, however, the Court does find that the information withheld from Mr. Tabb [the curator], directly prevented [S.R.] from being notified of the adoption of the minor children. This resulted in ill practice. Plaintiff did not accomplish due process.

On May 27, 2014, S.R. was personally served with the Petition for Intrafamily Adoption. On October 8, 2014, S.R. filed an answer alleging that she was unable to financially pay the support obligation and that in May of 2011, she was involved in an automobile accident with an eighteen wheeler that rendered her unable to work. S.R. also filed peremptory and declinatory exceptions of no cause

2

of action, no right of action, lis pendens, and improper service, all of which were denied by the trial court on January 22, 2015. On January 29, 2015, S.R. filed a motion for new trial, re-urging her exceptions of no cause of action, no right of action, and lis pendens. On December 19, 2016, after a hearing, the trial court signed a judgment that denied the motion for new trial.

On May 17, 2016, a bench trial was held on the Petition for Intrafamily Adoption. After a four-day trial, the trial court granted the Plaintiffs' adoption, finding that S.R. failed to pay child support and that it was in the best interest of the minor children to be adopted. S.R. now appeals this final judgment, alleging the following assignments of error: (1) the trial court erred when it allowed C.R. and M.R. to re-litigate their intrafamily adoption after it was annulled by judgment on May 22, 2014; (2) the trial court erred when it overruled her peremptory exception of no cause of action and no right of action and her declinatory exception of lis pendens; (3) the trial court erred when it failed to find that when an adoption judgment is annulled, the case resolves itself into a custody dispute; and (4) the trial court erred in finding that her consent was dispensed with when she failed to pay child support for a period of six months after the court ruled that C.R. and M.R. interfered with her attempts to visit or communicate with her children.

In their appellee brief, Plaintiffs alleged as their assignment of error that the December 13, 2016 judgment "should be modified, revised or reversed insofar as the adoption should have also been granted for the refusal or failure of [S.R.] to visit, communicate or attempt to communicate with the children, without just case, for a period of at least six (6) months." However, we find that this issue is not properly before this court as no answer to the appeal was filed pursuant to La.Code Civ.P. art. 2133. Thus, we will not consider Plaintiffs' argument.

3

While on appeal, S.R. filed two motions to consolidate, a peremptory exception of res judicata, and an emergency motion to correct record. On November 15, 2017, this court denied S.R.'s expedited motion to consolidate this current intrafamily adoption proceeding with an unlodged appeal in her non-support action finding that "judicial efficiency is not served with this consolidation." After reviewing the record, and for the reasons already stated by this court in its November 15, 2017 ruling, we deny S.R.'s second motion to consolidate this appeal with her unlodged appeal involving her non-support proceeding.

S.R. argues in her exception of res judicata that once the trial court annulled the Plaintiffs' intrafamily adoption decree on grounds of ill practices on May 22, 2014, the doctrine of res judicata bars the Plaintiffs from re-litigating their intrafamily adoption case. S.R. also argues that the intrafamily adoption proceeding resolved into a custody dispute by operation of law after the trial court annulled the adoption decree because it was obtained through ill practices. In support of this argument, S.R. cites to *In Re Wildeboer*, 406 So.2d 687, 690 (La. App. 2 Cir. 1981) and *Durr v. Blue*, 454 So.2d 315 (La.App. 3 Cir. 1984), for the proposition that once the nullity of an adoption judgment is determined, the contest resolves itself into a custody dispute. As such, S.R. argues that the Lafayette Parish District Court has subject matter jurisdiction over the custody and child support issues and that the Iberia Parish District Court lacked jurisdiction over the intrafamily adoption proceeding. After reviewing the pleadings and case law discussed below, we find no merit in S.R.'s res judicata argument that this matter resolved into a custody proceeding following the judgment being annulled or that the Iberia Parish District Court lacked subject matter over this adoption hearing.

The Louisiana Supreme Court addressed the history of the Louisiana Children's Code in *State in Interest of K.C.C.*, 15-1429, p. 9 (La. 1/27/16), 188 So.3d 144, 149, and stated, in pertinent part:

> The Children's Code was enacted in 1991 principally "to gather together all of the laws affecting the exercise of juvenile court jurisdiction" previously scattered within the Revised Statutes and the Code of Juvenile Procedure. Lucy S. McGough, The Drafting of the Children's Code, 1 Louisiana Children's Code Handbook, pp. xi, xvi (West 2016). The intention of the drafters was "a true code, an internally consistent, harmonious set of substantive principles and procedures . . . for any proceeding within the juvenile court's jurisdiction." *Id.* at xvii-xix. A goal of the drafters was "to resolve ambiguity and to reconcile often conflicting laws . . . ," such as "in the differences in the standing requirements and procedure governing abandonment proceedings and termination of parental rights cases. . . ." *Id.* at xvii-xviii; *see also* Comment, *Involuntary Termination of Parental Rights in Louisiana: Unraveling the Statute,* 58 Tul. L.Rev. 1045 (1984)(critiquing the pre-Code statutes as poorly drafted).

The Louisiana Children's Code authorizes intrafamily adoptions that involve a stepparent and spouse of the custodial parent of the child. La.Ch.Code arts. 1170 and 1243. Further, "[t]he 1991 enactment of the Children's Code, which includes fully articulated adoption procedures for . . . intrafamily adoptions, recognizes the importance of well-established, timely procedures for adoption. The title of the code which governs adoption states as its purpose 'to promote the permanent placement of available children into suitable homes.'" *In re Rodrigue*, 95-0009, p. 4 (La.App. 1 Cir. 6/23/95), 657 So.2d 648, 650, *writ denied*, 95-2141 (La. 10/27/95), 662 So.2d 2 (quoting La.Ch.C. art. 1167) (footnote omitted).

The cases cited by S.R. to support her argument that the intrafamily adoption matter is now a custody case, pre-existed the enactment of the Louisiana Children's Code. Because the Louisiana Children's Code now provides the

requirements and procedure for intrafamily adoptions, we find the *Wildeboer* and *Durr* cases unpersuasive in application to these proceedings. We also find no merit to the argument that res judicata bars the Plaintiffs from "re-litigating" their intrafamily adoption petition. As stated previously, the trial court specifically noted that it annulled the first judgment of adoption to cure a procedural defect and that it did not find fraud or ill practice. Accordingly, we deny S.R.'s exception of res judicata and find that the adoption proceeding was properly heard before the Iberia Parish District Court on May 17, 2016.

We also find no merit to S.R.'s emergency motion to correct the record that was filed on January 25, 2018. Although S.R. alleges in her motion that the record is missing the trial transcript from the March 19, 2014 hearing on the Petition to Annul Final Judgment, we find the record void of any request for the transcript or an appeal from the ruling on the annulment. Because S.R. is only appealing the December 13, 2016 judgment granting the intrafamily adoption, we see no need to supplement the record with the March 19, 2014 transcript that merely annulled the March 2, 2012 judgment on a procedural defect.

**STANDARD OF REVIEW:**

An intrafamily adoption is the adoption of a child by a stepparent or certain other relative. *See* La.Ch.Code. art. 1243. The manifest error standard of review applies when reviewing a trial court's decision to grant or deny a petition for adoption. *In re W.E.B.,* 07-1395 (La.App. 3 Cir. 3/5/08), 980 So.2d 123. "Pursuant to the well-settled manifest error standard of review, '[s]ubstantial commitment and parental fitness are factual findings that are entitled to deference unless the trial court is clearly wrong.' *In re Adoption of J.L.G.,* [01-269, p. 10

6

(La.App. 1 Cir. 2/21/01),] 808 So.2d [491,] 498." *Doe v. A.B.,* 06-1226, p. 5 (La.App. 3 Cir. 1/31/07), 949 So.2d 602, 605.

**DISCUSSION:**

Before considering the merits of the case, we will first address S.R.'s argument on appeal that the trial court erred in denying her peremptory exceptions of no right of action and no cause of action. The Louisiana Supreme Court discussed these exceptions in *Badeaux v. Sw. Computer Bureau, Inc.*, 05-0612, pp. 6-7 (La. 3/17/06), 929 So.2d 1211, 1216-17, (citations omitted) and stated in pertinent part:

> This court has recognized that one of the primary differences between the exception of no right of action and no cause of action lies in the fact that the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, while the focus in an exception of no cause of action is on whether the law provides a remedy against the particular defendant.
>
> The function of an exception of no right of action is a determination of whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. The exception of no right of action serves to question whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation.
>
> In contrast, an exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. The exception is triable on the face of the petition and, to determine the issues raised by the exception, each well-pleaded fact in the petition must be accepted as true. In reviewing a district court's ruling sustaining an exception of no cause of action, appellate courts conduct a de novo review because the exception raises a question of law and the district court's decision is based only on the sufficiency of the petition. An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. If the petition states a cause of

7

> action on any ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial.

In this case, Plaintiffs have a right of action in their suit as they clearly belong to the class of persons that have a legal interest under the La.Ch.Code. arts. 1243 and 1245. We further find that Plaintiffs have a cause of action as the last judgment regarding custody of the minor children was in March of 2010, when C.R. was awarded sole custody of the girls in the 15th Judicial District Court for the Parish of Lafayette. After reviewing the record, we find that C.R. and S.R. were not involved in "on-going" custody litigation during the two years prior to the Plaintiffs filing for the intrafamily adoption on January 6, 2012, that would have prevented them from filing this action in the 16th Judicial District Court for the Parish of Iberia. For these reasons, we find no error in the trial court judgment denying S.R.'s peremptory exceptions of no right of action and no cause of action.

We also find no merit to S.R.'s argument that the trial court erred in denying her declinatory exception of lis pendens. In Louisiana, lis pendens is defined by La.Code Civ.P. art. 531, and states:

> When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.

Again, because we find that there was no "on-going" custody litigation in the 15th Judicial District Court for the Parish of Lafayette for the two years prior to the Plaintiffs filing this intrafamily adoption case in the 16th Judicial District Court

for the Parish of Iberia, and because the two suits do not involve the same parties, we find that the trial court properly denied the declinatory exception of lis pendens.

We will now address the merits of the appeal. The issue before this court is whether the trial court erred in granting the Plaintiffs' Petition for Intrafamily Adoption on December 13, 2016. "To determine whether the grant or denial of a petition for adoption is warranted, the paramount consideration is the best interest of the child." *In re W.E.B.*, 980 So.2d at 126-27. Additionally, "[t]his determination is assessed on the facts of each individual case, and the trial court is vested with great discretion in making such decision." *Id.* at 127.

Generally, under La.Ch.Code art. 1193, a parent's consent is required for an intrafamily adoption. However, under La.Ch.Code art. 1245, consent of a parent is not necessary if the petitioner proves that the parent has forfeited his right to consent. Louisiana Children's Code Article 1245 states as follows:

> A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B or C of this Article at the hearing on the opposition and petition.
>
> B. When a petitioner authorized by Article 1243 has been granted custody of the child by a court of competent jurisdiction and any one of the following conditions exists:
>
> (1) The parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
>
> (2) The parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
>
> C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:

9

> (1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.

> (2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

Thus, C.R. and M.R. must carry the burden of proving S.R.'s consent is not required under the law. In the petition for adoption filed in January 2012, C.R. and M.R. alleged that C.R. was awarded sole custody of the two minor children in March of 2010, and that S.R. had neither paid child support since June of 2011, nor seen her children since December 2009.

At trial, S.R. agreed with the Plaintiffs' allegations that she had not paid child support since 2011, and that she had not seen the girls since December 2009, but testified that she was unable to work because of injuries she suffered after being in an accident with an eighteen wheeler and that Plaintiffs hindered her attempts to communicate and visit with her children. Although the trial court found just cause for S.R. not visiting or communicating with her children, it found that C.R.'s refusal or failure to comply with her court ordered child support obligation was without just cause for a period of at least six months prior to the filing of the petition. In its reasons for judgment, the trial court found that S.R. failed to present any evidence that she was unable to perform any type of work. Specifically, the trial court provided the following reasons for the judgment (citations to exhibits and trial transcripts omitted):

> [S.R.] provided no medical testimony of any physician that she was unable to perform any level of employment. Furthermore, during this period of time, [S.R.] failed to file for a modification or suspension of her child support obligation. The only evidence provided by [S.R.] showing her inability to work was an evaluation by Dr. Cornelius E. Gorman, II, a Certified Rehabilitation Counselor and Certified Life Care Planner. That

examination took place on January 10, 2014[,] for a forensic consultation. This evaluation failed to provide this Court with sufficient proof that [S.R.] was unable to perform any level of work. This evaluation by Dr. Cornelius E. Govman, [sic] II was conducted about two (2) years after the filing of the PETITION FOR INTRAFAMILY ADOPTION.

This Court also finds that [S.R.'s] incarceration was not just cause for her failure to pay court ordered child support. She was incarcerated from March-November 2010. She did not provide any evidence that shows her incarceration was due to a mistake or error by law enforcement. [S.R.] never made any child support payments from the date ordered by the court up to and through her incarceration. In addition, she failed to pay any of her child support obligation[s] for a seven (7) month period following her incarceration. Again, [S.R.] never sought a modification or suspension of her current child support obligation. It is clear to this Court that [S.R.] did not have any intention of paying her child support obligation. [S.R.] testified under cross examination on May 18, 2016[,] that she filed a lawsuit by herself (in forma pauperis) in Federal Court against Wal-Mart, Incorporated on January 21, 2015[.] Thus, this Court finds [S.R.] had the ability to file for a modification or suspension of her child support obligation.

This Court finds that petitioners, [C.R. and M.R.] have proven by clear and convincing evidence that [S.R.'s] refusal or failure to comply with her court ordered child support obligation was <u>without just cause</u> for a period of at least six (6) months prior to the filing of the PETITION FOR INTRAFAMILY ADOPTION on January 6, 2012. (Emphasis added)[.] This Court also finds that [S.R.'s] consent to this adoption is unnecessary.

After reviewing the record and exhibits, we agree with the trial court that S.R. failed to present evidence of "just cause" for her failure to pay her court ordered child support obligation. As such, we find that C.R. forfeited her right to consent to this adoption.

We now consider whether M.R.'s adoption is in the best interests of the children. Louisiana Children's Code Article 1255(C) provides that "[w]hen a court

11

has granted custody to either the child's grandparents or his parent married to the stepparent petitioner, there shall be a rebuttable presumption that this adoption is in the best interests of the child."

In this case, the children have been living with C.R. and M.R. since C.R. obtained custody of the minor children in March 10, 2010. In its reasons for judgment, the trial court gave reasons for finding the adoption was in the best interests of the children, and stated, in pertinent part (citations to exhibits omitted):

> [M.R.] is responsible for transporting the minor children to and from their respective schools. [M.R.] also plays a vital role in helping them with their homework and extracurricular school activities.
>
> According to [A.L.R.'s] testimony, she had been emotionally and physically abused by her mother, [S.R.]. In addition, [A.L.R.] also reported that she was physically abused by [S.R's.] husband, Frank. Together both children suffer from childhood trauma and severe anxiety as a result of the treatment from [S.R.] and Frank. Their greatest fear is being required to return to the home of [S.R.]. Ms. Amiee Broussard of priority Psychiatric Services reported to this Court that it was her professional opinion that these minor children are well cared for by [C.R.] and [M.R.]. Ms. Broussard further opined that removing the minor children from their stable environment would be detrimental to these children's emotional well[-]being.
>
> At trial in the matter, [A.L.R.] further testified that she has no relationship with her mother, [S.R.]. She last saw her mother in 2008. During the period of time while with her mother, she was physically and emotionally abused. She felt that when Frank physically abused her, [S.R.] failed to protect her. She testified that she does not want to see [S.R.]. It is her desire that she and her sister be adopted by [M.R.]. [A.L.R.] further testified that she has no love for her mother. Finally [A.L.R.] testified that her mother does not care about her.
>
> [B.A.R.] testified that [S.R.] and her husband, Frank[,] were very abusive. As a form of punishment, she was locked in a dog room (laundry room) where the dog sleeps. [B.A.R.] felt that her mother refused to protect her from the abuses of Frank. It is also her desire

12

that the adoption is granted. She has no desire to talk to [S.R.]. [M.R.] takes them to school, helps them with their homework, special projects, as well as her personal needs. She is fearful of going back to [S.R.]. She nor her sister ever received any Christmas or birthday gifts from their mother. They only received two (2) letters during the time their mother was incarcerated.

This Court finds that [A.L.R.] and [B.A.R.] do not have any type of relationship with their natural mother, [S.R.]. They do not consider [S.R.] to be their mother anymore. There is no type of bond with [S.R.]. It is their strong desire to be with their father and stepmother. This Court finds that the distance in time from the point their father obtained sole custody of the children to the filing of the PETITION FOR INTRAFAMILY ADOPTION has erased any emotional attachment with their natural mother. It appears that the only things the minor children remember from their natural mother are the physical and emotional abused inflicted on them over seven (7) years ago.

[C.R.] and [M.R.] have provided the minor children with a stable home. [M.R.] has treated these girls as if she was their natural mother helping with their school work, extracurricular school activities, as well as their personal needs. She also provides for their economic needs as well as their emotional needs. This Court finds that the actions of their natural mother [S.R.] is the total opposite.

Finally, this Court finds that this Intrafamily Adoption of the minor children is in their BEST INTEREST. (Emphasis added). For this Court to find otherwise under the facts of this case would be an injustice to [A.L.R.] and [B.A.R.].

After a thorough review of the record, we find that the evidence supports the trial court's judgment that granted the adoption and found that the adoption is in the best interest of the children. Therefore, we find the trial court's judgment neither manifestly erroneous nor clearly wrong.

In conclusion, we affirm the December 14, 2016 judgment that granted C.R. and M.R.'s Petition for Intrafamily Adoption. Further, S.R.'s motions to

consolidate and correct the record on appeal as well as her exception of res judicata

are denied.  All costs of this appeal are assessed to S.R.

**MOTIONS TO CONSOLIDATE AND CORRECT RECORD ARE DENIED; EXCEPTION OF RES JUDICATA DENIED; JUDGMENT AFFIRMED.**