NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-161

IN RE:

L.T.D., JR., APPLYING FOR INTRAFAMILY ADOPTION OF P.L.H.

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. A-389
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Candyce G. Perret, Judges.

REVERSED AND RENDERED.

**Emily Edwards Bertholl**
**Salario Law Firm**
**439 North Main**
**Marksville, LA 71351**
**(318) 240-7123**
**COUNSEL FOR APPELLANT:**
    **L.T.D., Jr.**

**Marion A. French**
**Attorney at Law**
**610 Murray St.**
**Alexandria, LA 71301**
**(318) 445-5516**
**COUNSEL FOR OTHER APPELLEE:**
    **P.L.H.**

**Edward W. Colbert, Jr.**
**Attorney at Law**
**P.O. Box 506**
**Natchitoches, LA 71458-0506**
**(318) 238-4060**
**COUNSEL FOR OTHER APPELLEE:**
    **D.D.H.**

**PERRET, Judge.**

Plaintiff, L.T.D., appeals the trial court's ruling denying his petition for intrafamily adoption, in which he seeks to adopt his stepdaughter, P.L.H.[1] For the following reasons, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

On April 10, 2023, L.T.D. filed a petition seeking to adopt P.L.H., the biological child of his wife, S.D.D., asserting that the biological father, "[D.D.H.] has refused or failed to visit, communicate, or attempt to communicate with [P.L.H.] without just cause, for a period over three (3) years[.]" At that time, P.L.H. was nine years old (DOB: August 20, 2013) and L.T.D. alleged that he has been in a relationship with S.D.D. since P.L.H. was one year old. L.T.D. and S.D.D. were married on November 13, 2021, and L.T.D. alleged that he "has raised [P.L.H.] as his own and is the father [P.L.H.] has known as [her] father for over three (3) years." In support of the petition, L.T.D. attached the following exhibits: (1) P.L.H.'s birth certificate; (2) the application for the intrafamily adoption; (3) an August 18, 2020 judgment awarding S.D.D. "sole custody of [P.L.H.] . . . under the Post Separation Family Violence Relief Act[;]" and (4) S.D.D.'s Authentic Act of Consent to Adoption, signed on April 6, 2023.

On May 1, 2023, D.D.H. filed an answer to the petition opposing the adoption and, on May 10, 2023, he filed an amended answer and opposition. In his opposition, D.D.H. alleged that he and S.D.D. "followed an informal visitation arrangement for approximately seven (7) years after they ended their relationship in January of 2014" and that he paid child support from 2014 through 2020 but stopped his payments in

---

[1] We use the parties' and minor child's initials for confidentiality purposes. *See* Uniform Rules – Courts of Appeal, Rule 5-2.

2020 when S.D.D. "dropped her request for child support." D.D.H. claims that S.D.D. "prevented [him] from seeing or speaking with his daughter since 2020" but that he "has continued to maintain heath care coverage for the minor child through his employer's health benefits."

On May 30, 2023, the trial court appointed counsel for P.L.H. Thereafter, a trial on the merits was held on July 28, 2023, where the trial court heard testimony from several witnesses, including: S.D.D.; L.T.D.; D.D.H.; and D.D.H.'s two sisters. After hearing the testimony, the trial judge stated as follows (emphasis in original):

> [D.D.H.] it is clear to the Court that for a period of well in access [sic] of six (6) months, you did not communicate with your daughter, and you took no reasonable steps to do so, sir. You knew where she lived, you might not have known the address, but you took absolutely no effort to find out what it was. You could have said if [S.D.D.] is blocking you from contacting your daughter by telephone, you could have sent her birthday card, you could have sent her a Christmas card, you could of sent her a cell phone, call me. There are a lot of ways to communicate with people today[,] especially people that live about twenty-five (25) miles from you in a house that you used to live in.

> While they didn't - - while [S.D.D. and L.T.D.] didn't make it easy on you, sir, they didn't prevent you from communicating with your daughter.

> It is also clear that [L.T.D.] has resided in the same home as the child uh, for a period of in excess of six (6) months. He has - - he is married to [S.D.D.] based upon their testimony.

> So the issue is, is it in [P.L.H.'s] best interest for her to be adopted by [L.T.D.]. They have the burden of proving that too. They have the burden of proving that by preponderance of the evidence.

> Article - - Children's Code of Article 12[]55 indicates in sub paragraph C, that when a Court has grant[ed] custody to either of the child's parents or his parent [is] married to the step parent, there shall be a rebuttal presumption that this adoption is in the best interest of the child.

> The Court had previously granted custody to [S.D.D.], she is married to [L.T.D.], and therefore, there is a rebuttal presumption that the adoption is in the best interest of [P.L.H.].

2

. . . .

It's been testimony that [P.L.H.] is nine (9), it's been several years since she's seen you, probably about six (6). Does she know you, does she remember you? [S.D.D.] indicated that she does. According to [S.D.D.] she [P.L.H.] gets scared every time she sees a vehicle like yours. That would indicate to me that she still remembers you.

Both [S.D.D. and L.T.D.] had testified that [L.T.D.] has a good relationship with the child. That they have a very close bond, that this is the child's idea to be adopted by [L.T.D.]. She's been calling him daddy for years now, and she wants to have his last name. Is that true? I don't know. Two (2) ways to find out. She can come sit right there and tell me, nobody wanted to do that. She's nine (9), I get that.

There's another way we can find out whether she wanted to be adopted or not. . . . Kirby somebody, the counselor, who [P.L.H.]'s been seeing in anticipation of this adoption hearing could come tell us how P.L.H. feels about her dad, [L.T.D.] this whole adoption process. Probably a good way for a nine (9) year old. . . .

How would the life - - how would [P.L.H.]'s life change if the Court granted the adoption? Wouldn't change a bit. The only thing that would change would be her last name. The man that has been her father is still going to be her father.

[D.D.H.], one of your sisters described you as a[n] active father. You are more active than some fathers, but you're not a father sir, not to [P.L.H.]. A father cares for his child every day, every day in one way or another, and he doesn't abdicate that responsibility to the mother or another man. You saw your daughter when it was convenient for her, and when it was convenient for you, and being a parent has nothing to do with convenience, sir. Children are a lot of things, a lot of good things, but they are not convenient.

[D.D.H.] and [L.T.D.], this isn't about [who's] the better daddy. [L.T.D.] is. [L.T.D.] is the better daddy. Given the nature of his work he's probably not there every day, I would assume there are a lot of extended periods of time when he's not there.

But this is really about her. This is about what is best for her, does she want to legally view [L.T.D.] as her father for all purposes. I don't know. And that's really the important part.

[L.T.D.], you're doing everything that a man should do to care for a daughter um, I suspect that you're going to continue to do that, sir.

BY MR. [L.T.D.]: Yes, sir.

3

BY THE COURT: Uh, whether this name is important to her or not, I don't know, sir. But that was something that needed to be proven to me, and uh, I've already discussed the ways that could have been done, and it was not.

**RULING**

BY THE COURT: With respect to the issue of is [sic] this termination of his rights, and the legal recognition that she would be your daughter for all purposes, would that be in her best interest? Sir, I do not find that has been proven by preponderance of the evidence. The Court is going to **deny** the request for adoption at this time.

On November 30, 2023, the trial court rendered a signed judgment denying the petition for the intrafamily adoption. L.T.D. now appeals, alleging the following two assignments of error:

1. The Trial Court committed legal error when it denied the adoption based upon petitioner, [L.T.D.], not meeting burden of proof by preponderance of the evidence, that the adoption was in the best interest of the child.

2. The Trial Court committed legal error when it did not obligate [D.D.H.] to rebut the presumption that the adoption was in the best interest of P.L.H. pursuant to [La.Ch.Code. art. 1255(C)].

**STANDARD OF REVIEW**

"An intrafamily adoption is the adoption of a child by a stepparent or certain other relative. *See* La.Ch.Code. art. 1243. The manifest error standard of review applies when reviewing a trial court's decision to grant or deny a petition for adoption." *In re ALR*, 17-916, p. 6 (La.App. 3 Cir. 3/14/18), 240 So.3d 273, 277, *writ denied*, 18-954 (La. 8/31/18), 251 So.3d 413. "Under the manifest error standard, the issue is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one after reviewing the record in its entirety." *Succession of Cox*, 23-773, p. 4 (La.App. 3 Cir. 5/15/24), 388 So.3d 523, 526 (citing *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993)).

DISCUSSION

L.T.D., as the stepfather of P.L.H., contends the trial court erred in denying his petition for intrafamily adoption. L.T.D. argues that he met his burden of proving that D.D.H. had not communicated with the child or paid child support for a period of at least six months; therefore, he made a prima facie showing that D.D.H.'s consent to the adoption was not necessary. As such, L.T.D. argues that the burden shifted to D.D.H. to show his failure was due to factors beyond his control, which L.T.D. argues D.D.H. was unable to do. Additionally, L.T.D. asserts the trial court manifestly erred when it did not require D.D.H. to rebut the presumption that the adoption was in the best interest of the minor child, per La.Ch.Code art. 1255(C).

The Louisiana Children's Code authorizes the adoption of a child by a stepparent. *See* La.Ch.Code art. 1243. Generally, the consent of the biological father is required for an intrafamily adoption by the stepfather. *See* La.Ch.Code art. 1193. However, the consent of a biological parent is not required for adoption by a stepparent petitioner married to the parent with lawful custody when either "(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months[,]" or "(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months." La.Ch.Code art. 1245(C).

"The party petitioning for adoption has the initial burden of proving that a biological parent's consent is not required due to the parent's nonsupport of or lack of communication with the child by clear and convincing evidence." *In re L.W.B. and S.S.B. in Int. of K.S.B.*, 23-248, p. 5 (La.App. 3 Cir. 10/4/23), 371 So.3d 1213, 1216, *writ denied*, 23-1454 (La. 1/10/24), 376 So.3d 849. As recently stated in *In re Thompson*, 24-47, pp. 5–6 (La.App. 5 Cir. 5/29/24) 389 So.3d 982, 987:

5

"To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is much more probable than its nonexistence." *In re Adoption of B.C.F.*, [14-108, p. 6 (La.App. 5 Cir. 6/24/14),] 145 So.3d [509] at 513, [*writ denied*, 14-1502 (La. 7/21/14) 147 So.3d 681] quoting *In re Intra Family Adoption of A.G.T.*, 06-805 (La.App. 5 Cir. 3/13/07), 956 So.2d 641, 648, [*writ denied*, 07-783 (La. 5/4/07), 956 So.2d 611]. The court is to hear and take into consideration information from all sources concerning the intrafamily adoption. *Id.*, citing *In re C.E.M., III*, 09-787 (La.App. 5 Cir. 1/26/10), 31 So.3d 1138, 1143–44. Once a *prima facie* case is proven, the opposing parent then has the burden of proving that his failure to provide support or communicate with his child was with "just cause" or due to factors beyond his control. *In re J.W.R.*, [21-691 (La.App. 5 Cir. 3/3/22),] 340 So.3d [1242] at 1246–47. The trial court must thereafter consider whether the adoption is in the best interest of the child. *Id.* at 1247.

At the hearing, S.D.D. testified that she filed a petition for sole custody of P.L.H. on March 19, 2020, after having to pick up P.L.H. from D.D.H.'s girlfriend's house following a domestic dispute between D.D.H. and his girlfriend. S.D.D. testified that once she was granted sole custody of P.L.H., D.D.H. never asked her to see P.L.H. When asked about the relationship between P.L.H. and D.D.H., S.D.D. testified that P.L.H. is "terrified of him[,]" that "[s]he does not want to have any contact with him[,]" and that "she's like in fear, she has nightmares, . . . [and] just start[s] shaking." S.D.D. further testified that she terminated D.D.H.'s child support payments in January 2021 because L.T.D. was financially providing for P.L.H. and there were "no reasons to take from [D.D.H.] whenever he had nothing to do with her."

S.D.D. testified that P.L.H. was less than a year old when L.T.D. started caring for her and that P.L.H. refers to L.T.D. as her "daddy" and that P.L.H. is "probably closer to him than [her]." S.D.D. testified that L.T.D. continues to financially support P.L.H. and that P.L.H. continues to ask for her last name to be changed to

L.T.D.'s name because "[s]he has a strong passion, strong bond for her daddy [L.T.D]."

L.T.D. also testified that he provides for P.L.H. financially and emotionally, and that, to his knowledge, there has not "been any physical or phone contact between P.L.H. and [D.D.H.]" since S.D.D. filed her petition for custody in March 2020. L.T.D. testified that P.L.H. is scared of D.D.H. and that "she would have nightmares[,]" and would "freak out" at the thought of seeing D.D.H.'s vehicle. When asked what L.T.D. thought about D.D.H.'s parental rights being terminated, L.T.D. responded, "I've been in her life since she was like three (3) months, so I mean, . . . I pretty much [have] been the dad that she's - - that she has. . . . I've been supporting her, loving her[.]"

During the hearing, D.D.H. was questioned by the court about his relationship with P.L.H. Specifically, D.D.H. testified as follows:

Q    Whose P.[L.]H.'s father?

A    I am.

Q    Are you? Since April of 2020 have you feed [sic] her?

A    No, sir.

Q    Have you bought her clothes?

A    No, sir.

Q    Have you taken her to church?

A    No, sir.

Q    Did you put her on the bus?

A    No, sir.

Q    Have you gotten her off the bus?

A    No response recorded.

7

Q      Have you even said a word to her?

A      I tried, but wasn't able to.

Q      So my question Mr. [D.D.H.], . . .

A      Yes, sir.

Q      . . . since April of 2022, who is P.[L.]H.'s father?

A      Mr. [L.T.D.] he's been there, never not (indistinct).

Q      Mr. [D.D.H.], I'm going to give you a little tip, sir.  A parent's right to interact with their child is not governed by the other parent.  If you and the other parent do not agree on the amount of interaction with your child, that's when the courts get involved.  If once a month is not enough, the courts help.

A      Yes, sir.

During the hearing, the trial judge asked Marion French, counsel for P.L.H., who was nine years old at the time, whether P.L.H. would be testifying.  Mr. French responded as follows: "I'm not planning on it.  You can certainly interview her.  I've already talked to her.  Uh, but I'm - - I'm not going to put her on the stand. . . . I mean she does want to be adopted.  But you can certainly interview if you'd like."

After reviewing the record, we find that L.T.D. legally met his initial burden of proving that D.D.H.'s consent was not required due to his lack of communication with P.L.H. for over six months.  We also find D.D.H. did not meet his burden of proving that his failure to communicate with P.L.H. for over six months was with "just cause" or due to factors not in his control.  Therefore, we agree with the trial court that D.D.H.'s consent to the adoption was not necessary.

However, "[e]ven where a parent's consent is obviated by failure to visit, the court must also consider what is in the best interest of the child in determining whether the adoption should proceed." *State in Int. of E.B.*, 23-1352, p. 10 (La.App. 1 Cir. 4/19/24), 390 So.3d 335, 343, *writ denied*, 24-641 (La. 9/4/24), __So.3d __.

The basic consideration in an intrafamily adoption "shall be the best interests of the child." La.Ch.Code art. 1255(B). According to La.Ch.Code art. 1255(C), when a stepparent seeking adoption is married to the parent who has been granted sole custody of the child, "there shall be a rebuttable presumption that this adoption is in the best interests of the child." Because L.T.D. is married to S.D.D., and because S.D.D. has sole custody of P.L.H., D.D.H. had the burden of proving that the adoption was not in the best interest of P.L.H.

D.D.H. admits that he has had no contact with P.L.H. since March 2020 and that L.T.D. has been there for P.L.H. during that time. The testimony reflects that L.T.D. and P.L.H. have had a bond with each other since P.L.H. was a year old and that L.T.D., for the last three years, has been the one to meet P.L.H.'s financial and emotional needs. The trial judge also found that L.T.D. "is the better daddy" and that he is "doing everything that a man should do to care for a daughter[.]" We find the record void of any evidence to rebut the presumption that the adoption is in the best interest of the child.

Despite D.D.H.'s failure to rebut the presumption that the adoption is in the best interest of P.L.H., the trial judge denied the adoption upon questioning whether the evidence proved that P.L.H. "wanted[ed] to legally view Mr. [L.T.D.] as her father for all purposes." However, we find the testimony establishes that P.L.H. wanted to be legally adopted by L.T.D. and that she did not want to have any contact with D.D.H. Specifically, S.D.D. testified as follows:

A      I've asked P.[L.]H. if she wanted to talk to [D.D.H.].

Q      Uh-huh (affirmative response).

A   P.[L.]H. is terrified of him from the incidents in the report that Ms. Becky had typed up.[2]

Q   Okay.

A   She does not want to have any contact with him, I've never told P.[L.]H. she couldn't talk to him, nothing, but she's terrified.

Q   Okay.

A   She's [sic] see [sic] a counselor.

Q   Okay, have you - - have you presented your phone to her, and said, look call your dad if you want?

A   I asked her - - like when he would text, I would say hey P.[L.]H. um, you know your dad wants you to call him, would you like to?  And she's like in fear, she has nightmares, um, she immediat [sic] - - like just start [sic] shaking.

Although P.L.H. did not testify, L.T.D. and Mr. French both testified that P.L.H. wanted to be adopted by L.T.D.  S.D.D. also testified that the filing of the petition for the intrafamily adoption was at the request of P.L.H. and that P.L.H. has been calling L.T.D. "daddy" since 2019.  Although the Louisiana Children's Code mandates for a court to "solicit and consider" the child's wishes in an intrafamily adoption matter, this requirement is only "[i]f the child to be adopted is twelve years of age or older."  La.Ch.Code art. 1253(C).  In this case, P.L.H. was only nine years old; however, it is worth reiterating that her attorney did advise the court of P.L.H.'s wishes to be adopted by L.T.D.

Because we find the record void of any evidence to rebut the presumption that the adoption is in the best interest of the child, we find the trial court erred in denying

---

[2] S.D.D. hired attorney Becky LeBlanc to file the March 19, 2020 petition for sole custody. The petition alleged that "immediate and irreparable harm and injury will occur to the minor child if [D.D.H.] is permitted unsupervised visitation with the minor child."  The petition listed ten incidents to show that D.D.H. "lacks the requisite social control, maturity and stability to function as a serious custodial parent and he has exhibited this conduct by always placing his own interests and desires above that of his child, this behavior being contrary to the best interest of the minor child."

the intrafamily adoption.  Accordingly, we reverse the trial court's judgment denying

the intrafamily adoption and hereby grant the petition in favor of L.T.D.  All costs

of this appeal are assessed to D.D.H.

**REVERSED AND RENDERED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.